## DILLINGHAM v. UNITED STATES.
### No. 7620.

Circuit Court of Appeals, Fifth Circuit.
March 7, 1935.

W. P. Hughes, of Miami, Fla., for appellant.

John W. Holland, U. S. Atty., of Jacksonville, Fla.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal is from a judgment on a sentence to two years in the Atlanta penitentiary, entered on the judge's finding of guilt in a trial without a jury. This bill of exceptions, like the one in the probation appeal of this same appellant, Dillingham v. United States (C. C. A.) 76 F.(2d) 35, was made up by counsel employed since the trial. It shows no definite objections made, and no exceptions taken to any of the trial proceedings. It is claimed, on behalf of appellant, that his failure to do any of these things, in view of the way the case was tried below and the record that was made there, only emphasizes the fundamental error on which he relies for reversal. This error, to which all of his assignments and propositions relate, is that he was not accorded a fair trial. It is claimed that the trial was unfair in these particulars: (1) In calling up the indictment against him, and in putting him, without benefit of counsel and advice from the court as to his constitutional rights, to an immediate election whether he would waive a jury, he standing there subject to summary trial on the probation charge. (2) In permitting Mr. Davis, who had already advised the court that he did not represent appellant, but another defendant in the case, and who had already made agreements, presumably beneficial to that client, to assume to represent appellant, without inquiring whether, in the circumstances of the case, it was to appellant's interest to have Davis volunteer to represent him. (3) In convicting appellant, not upon the testimony of witnesses, but over the objection of appellant to their use, upon unsworn statements obtained by a government investigator, mainly from codefendants or those having claims against him. (4) In convicting him at all, because the evidence was wholly insufficient as matter of law, to establish his guilt, beyond a reasonable doubt, of the offense charged.

Appellee relies on the showing of the bill of exceptions: That appellant personally agreed to waive a jury, and to be at once tried by the court; that the statements on which he was convicted were read under an agreement Davis, his attorney on the probation hearing, had made with the District Attorney, that statements taken by the government investigator might be used in lieu of witnesses; that Davis, at the commencement of the trial, stated to the court that he would also represent Dillingham, and that Dillingham did not protest. Appellant, admitting that he did agree to waive a jury, urges that he did so without having explained to him, and with no sufficient understanding of, his rights, and that he did it under circumstances which deprived his assent of that free volition essential to a jury waiver. He urges, too, that if he did waive a jury, he never intended to agree, and did not knowingly agree, to waive a legal trial and be tried informally in a trial in which no witnesses were sworn, but a government investigator retailed, sometimes in full, sometimes by summary, the hearsay statements he had gathered up from appellant's codefendants, and from persons having claims against him. He answers the proposition that Davis represented him and agreed for him that he should be put in jeopardy on a felony charge, in this special proceeding, not a trial as known to the common law, because in conformity with none of the recognized and established trial rules and safeguards, that Davis was not his lawyer, but only a volunteer, and, further, if he was, a lawyer cannot waive the substantial rights of a defendant in a felony case. Finally, he insists that the whole proceeding in its complete aberration from trial rules, with the sanction and approval of the trial judge, is so lacking in the essentials of a fair trial, and especially in those safeguards to which a defendant is entitled, that this court must declare it a nullity, though there was no objection taken and no exception saved.

We think appellant is right. "Trial by jury is the normal and, with occasional exceptions, the preferable mode of disposing of issues of fact in criminal cases above the grade of petty offenses. In such cases the value and appropriateness of jury trial have been established by long experience, and are not now to be denied. Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and

with a caution increasing in degree as the offenses dealt with increase in gravity. Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263."

The conduct and result of the trial in chambers of this jury waived case, as disclosed by the bill of exceptions, emphasizes the propriety and wisdom of this caution. This is what the bill shows. The defendant having been brought from the jail, where he was confined as a fugitive probationer, and being represented in that matter by Davis, the judge of his own motion, before proceeding with the hearing, inquired of the District Attorney whether another indictment was not pending against appellant. Advised that there was, the judge then inquired of Davis whether he represented the defendant in the indictment case. Advised that he did not, but that he represented another defendant in that case, the judge then caused appellant to be arraigned and to plead to the indictment. Upon his pleading not guilty, the judge inquired of him whether or not he was ready for trial and whether or not he desired a jury trial, whereupon defendant, standing there subject to summary trial by the court upon the probation charge, and without benefit of counsel or advice that a jury trial was the normal procedure in such a case, and that his right to it was absolute, stated that he was ready for and wanted an immediate trial on the indictment charge, and that he would agree to be tried by the court without a jury. The judge then stating that he would not try the defendants one at a time, inquired of Mr. Davis, counsel for the other defendant, why he did not have him in court. Advised by Davis that he had not known the case was to be tried, but that he would get the defendant in court by the afternoon of that day, all proceedings were suspended until 2 o'clock. At that time appellant was brought before the court in chambers. The codefendant, Heddon, also appeared and through Davis pleaded not guilty, announced ready for trial, and consented to be tried before the court without a jury. Davis then stated to the court that he would also represent Dillingham. Appellant said nothing. The District Attorney then stated that he could not have his witnesses present, but that he and Davis had, during the recess, agreed to proceed with the trial and to permit Galvin, the customs agent, who had investigated the case, to read in part and in part state to the court the substance of the sworn statements or affidavits of the witnesses who had been interviewed by him. Thereupon the defendant Dillingham arose to object to such statements being used. Davis then stated to the court that he, Davis, had agreed to their use, but that in permitting the agent to read the statements he did not thereby waive the materiality or competency of any statement of fact contained in them, which the parties making such statement could not testify to if personally present in court. Dillingham saying no more, the court ruled that since the case was being tried before him without a jury, he could tell the difference between competent and incompetent testimony, and would give the matter due consideration. Galvin, then unsworn, read in part and stated the substance in part of the statements of Moore and Smith, and of Valentine, a defendant in the case. These statements amounted to no more than this, that the Baird, a seagoing barge, was moored off the coast as a sort of gambling and dancing casino and restaurant, and that at one time Dillingham had all the concessions on it, except that of food and soft drinks. That domestic beer and home-brew were mainly served, but some of the witnesses thought or surmised that some foreign beer was brought there one night, with Dillingham's knowledge or consent. No one testified positively to the foreign character of the beer, or to its importation without the payment of duty, or that Dillingham had had anything to do with it. Especially as to the important matter of the contraband character of the beer did the evidence amount to little more than surmise and suspicion. Dillingham, himself unsworn, testified that in letting out the concessions he had had a strict understanding that intoxicating drinks or beer to be served would be of no greater alcoholic content than 3.2 beer, and, further, that he was to have nothing whatever to do with the handling of this concession, Valentine to be entirely responsible for it. His letter to Valentine of April 13, stating these facts, confirms this testimony. The other defendant, also unsworn, testified that he was employed by Dillingham as cashier; that he did not collect any beer money for Dillingham, but that he only collected Dillingham's share of the gambling profits. The hearing concluded, the court announcing that he considered him a mere tool of the defendant Dillingham, found Heddon not guilty, appellant guilty, and proceeded to

impose sentences in this case and in the revocation proceeding, aggregating four years in all.

Ordinarily, a defendant who has been tried and convicted on a criminal charge may not come here claiming a reversal, except for error duly saved and duly assigned.

"On the other hand, a trial judge may never abdicate his function, or surrender to counsel the conduct of the trial. It is still his primary duty to oversee and conduct it. Because this is so * * * the appellate court may, though no objection is made and no exception taken, correct an error of abdication which has resulted unjustly, by voiding the trial. But this will be done only in extreme cases, where the judge's error in permitting the trial to get out of bounds, instead of exercising his function to guide and control it, is of such transcendant influence on the course of the trial as that, though not excepted to, justice requires its being noticed and corrected." Maryland Casualty Co. v. Reid (C. C. A.) 76 F.(2d) 30; c/f Boyett v. United States (C. C. A.) 48 F.(2d) 482.

When, as here, defendant brings up a record which shows that he has not had the trial by jury which the Constitution guarantees, if waiver is relied on for affirmance, particularly if the waiver has been given without advice of counsel of his own selection, the record must clearly show that the waiver was formally and legally obtained upon a full explanation and understanding of his rights. It must show, too, that the following trial has been a fair one, conducted with a scrupulous regard for defendant's legal rights. In this case, the record entirely fails to show these essentials to an affirmance. On the contrary, it shows a complete abandonment of all the ordinary trial safeguards and rules, and the resulting deprivation of nearly all of defendant's constitutional rights. When it is claimed, to sustain a felony trial resulting in a penitentiary sentence that the defendant has waived every safeguard the law accords him, such waiver must be better shown than it is here. But this is not all. Defendant has not only been convicted without a jury trial, in fact, without a trial at all, as that is known to the common law, but he has been convicted on unsworn hearsay testimony made up of rumor and suspicion, which if its substance had come in properly as testimony, would hardly suffice to make a jury case. In fact, we do not think it would suffice to show beyond a reasonable doubt, as the law requires, that any imported, untaxed beer was ever brought on the boat, or, if it was, that Dillingham had anything to do with it. The conviction and judgment may not stand.

Reversed and remanded.