# ADAMS, WARDEN, ET AL. *v.* UNITED STATES EX REL. McCANN.

No. 79. Argued November 17, 18, 1942.—Decided December 21, 1942.

*Solicitor General Fahy,* with whom *Assistant Attorney General Berge* and *Messrs. Archibald Cox* and *Richard S. Salant* were on the brief, for petitioners.

*Mr. Robert G. Page* for respondent.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This is a review of an order by the Circuit Court of Appeals for the Second Circuit discharging the relator McCann from custody. We accept as facts, as did the court below, those set forth in the untraversed return to the writ of *habeas corpus* in that court.

McCann was indicted on six counts for using the mails to defraud, in violation of § 215 of the Criminal Code, 18 U. S. C. § 338. From the time of his arraignment on February 18, 1941, to the prosecution of his appeal in the court below, McCann insisted on conducting his case without the assistance of a lawyer. When called upon to plead to the indictment, he refused to do so; a plea of not guilty was entered on his behalf. The District Court at that time advised McCann to retain counsel. He refused, however, "stating in substance that he desired to represent himself, that the case was very complicated, and that he was so familiar with its details that no attorney would be able to give him as competent representation as he would be able to give himself."

When the case came on for trial on July 7, 1941, McCann repeated, in reply to the judge's inquiry whether he had counsel, that he wished to represent himself. In response to the court's further inquiry whether he was admitted to the bar, McCann "replied that he was not, but that he had studied law, and was sufficiently familiar therewith adequately to defend himself, and was more familiar with the complicated facts of his case than any attorney could ever be." [1]  McCann "then moved to have

---

[1] McCann had brought suit in 1933 against the New York Stock Exchange, its officers and members, the Better Business Bureau of New York, and a large number of other persons, seeking thirty million dollars damages for conspiracy in restraint of trade. He represented himself in this extensive litigation, and personally brought appeals to

the case tried without a jury by the judge alone. There was a brief discussion between the Court, the petitioner, and the Assistant United States Attorney," after which McCann submitted the following over his signature: "I, Gene McCann, the defendant herein, appearing personally, do hereby waive a trial by jury in the above entitled case, having been advised by the Court of my constitutional right." The Assistant United States Attorney consented, and the judge (one of long trial experience and tested solicitude for the civilized administration of criminal justice) entered an order approving this "waiver."

The trial then got under way. It lasted for two weeks and a half, and throughout the entire proceedings McCann represented himself. He was convicted on July 22, 1941, and was sentenced to imprisonment for six years and to pay a fine of $600. He took an appeal, and the trial judge fixed bail at $10,000. Being unable to procure this sum, he remained in custody. Then followed applications to the Circuit Court of Appeals, likewise pressed by McCann himself, for extending the time for filing a bill of exceptions. In these proceedings both the trial and appellate courts again suggested to McCann the advisability of being represented by counsel. After having personally made these numerous applications, McCann finally secured the assistance of an attorney. The latter applied to the Circuit Court of Appeals for reduction of bail. It was so reduced. But at the same time the court suggested that McCann take out a writ of *habeas corpus*, returnable to the court, to raise the question whether, in the circumstances of the case, "the judge had jurisdiction to try him."

As is pointed out in the opinion of the Circuit Court of Appeals, "At no time did he [McCann] indicate that

the Circuit Court of Appeals and to this Court. See *McCann* v *New York Stock Exchange,* 80 F. 2d 211; 107 F. 2d 908; 309 U. S. 684.

he wished a jury or that he repented of his consent—either while the cause was in the District Court or in this court—until the attorney, who now represents him, in March, 1942, raised the point" at the court's invitation. The "point" thus projected into the case by the Circuit Court of Appeals was presented, in its own words, "in the barest possible form: Has an accused, who is without counsel, the power at his own instance to surrender his right of trial by jury when indicted for felony?" [2] The Circuit Court of Appeals, with one judge dissenting, answered this question in the negative. It held that no person accused of a felony—who is himself not a lawyer—can waive trial by a jury, no matter how capable he is of making an intelligent, informed choice and how strenuously he insists upon such a choice, unless he does so upon the advice of an attorney. 126 F. 2d 774. The obvious importance of this question to the administration of criminal justice in the federal courts led us to bring the case here. 316 U. S. 655.

A jurisdictional obstacle to a consideration of this issue is pressed before us. It is urged that the Circuit Court of Appeals had no jurisdiction to issue the writ of *habeas corpus* in this case. The discussion of this question took an extended range in the arguments at the bar, but in the circumstances of this case the matter lies within a narrow compass. Uninterruptedly from the first Judiciary Act (§ 14 of the Act of September 24, 1789, 1 Stat. 73, 81) to the present day (§ 262 of the Judicial Code, 28 U. S. C. § 377), the courts of the United States have had powers of an auxiliary nature "to issue all writs not specifically provided for by statute, which may be necessary for the

[2] Felony, it may not be irrelevant to note, is a verbal survival which has been emptied of its historic content. Under the federal Criminal Code all offenses punishable by death or imprisonment for more than a year are felonies. § 335 of the Criminal Code, 18 U. S. C. § 541.

exercise of their respective jurisdictions, and agreeable to the usages and principles of law." In *Whitney* v. *Dick*, 202 U. S. 132, this Court held that where no proceeding of an appellate character is pending in a Circuit Court of Appeals, the authority to issue auxiliary writs does not come into operation. A circuit court of appeals cannot issue the writ of *habeas corpus* as "an independent and original proceeding challenging *in toto* the validity of a judgment rendered in another court." But the Court also recognized that there was power to issue the writ "where it may be necessary for the exercise of a jurisdiction already existing." 202 U. S. at 136–37. In the case at bar, a proceeding of an appellate character was pending in the Circuit Court of Appeals, for McCann had already filed an appeal from the judgment of conviction. There was, therefore, "a jurisdiction already existing" in the Circuit Court of Appeals. But could the issuance of the writ be deemed "necessary for the exercise" of that jurisdiction?

Procedural instruments are means for achieving the rational ends of law. A Circuit Court of Appeals is not limited to issuing a writ of *habeas corpus* only when it finds that it is "necessary" in the sense that the court could not otherwise physically discharge its appellate duties. Unless appropriately confined by Congress, a federal court may avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it. Undoubtedly, therefore, the Circuit Court of Appeals had "jurisdiction," in the sense that it had the power, to issue the writ as an incident to the appeal then pending before it. The real question is whether the Circuit Court of Appeals abused its power in exercising that jurisdiction in the situation that confronted it.

Of course the writ of *habeas corpus* should not do service for an appeal. *Glasgow* v. *Moyer*, 225 U. S. 420, 428; *Matter of Gregory*, 219 U. S. 210, 213. This rule must be strictly observed if orderly appellate procedure is to be maintained. Mere convenience cannot justify use of the writ as a substitute for an appeal. But dry formalism should not sterilize procedural resources which Congress has made available to the federal courts. In exceptional cases where, because of special circumstances, its use as an aid to an appeal over which the court has jurisdiction may fairly be said to be reasonably necessary in the interest of justice, the writ of *habeas corpus* is available to a circuit court of appeals.

The circumstances that moved the court below to the exercise of its jurisdiction were the peculiar difficulties involved in preparing a bill of exceptions. The stenographic minutes had never been typed. The relator claimed that he was without funds. Since he was unable to raise the bail fixed by the trial judge, he had been in custody since sentence and therefore had no opportunity to prepare a bill of exceptions. The court doubted "whether any [bill] can ever be made up on which the appeal can be heard . . . In the particular circumstances of the case at bar, it seems to us that the writ is 'necessary to the complete exercise' of our appellate jurisdiction because . . . there is a danger that it cannot be otherwise exercised at all and a certainty that it must in any event be a good deal hampered."

The court below recognized, however, that a bill of exceptions might be prepared which would be confined to the single point raised by the writ of *habeas corpus*. This is the basis for the contention that the writ of *habeas corpus* in this case performs the function of an appeal. But inasmuch as McCann was urging a number of grounds for the reversal of his conviction, including the sufficiency of the evidence, the Circuit Court of Appeals was justified

in concluding that it would not be fair to make him stake his whole appeal on the single point raised by this writ. We cannot say that the court was unreasonable in the view it took of the situation with which it was presented and with which it was more familiar than the printed record alone can reveal. The writ of *habeas corpus* was not a substitute for the pending appeal, and was therefore not improvidently entertained by the court below.

This brings us to the merits. They are controlled in principle by *Patton* v. *United States,* 281 U. S. 276, and *Johnson* v. *Zerbst,* 304 U. S. 458. The short of the matter is that an accused, in the exercise of a free and intelligent choice, and with the considered approval of the court, may waive trial by jury, and so likewise may he competently and intelligently waive his Constitutional right to assistance of counsel. There is nothing in the Constitution to prevent an accused from choosing to have his fate tried before a judge without a jury even though, in deciding what is best for himself, he follows the guidance of his own wisdom and not that of a lawyer. In taking a contrary view, the court below appears to have been largely influenced by the radiations of this Court's opinion in *Glasser* v. *United States,* 315 U. S. 60. But *Patton* v. *United States, supra,* and *Johnson* v. *Zerbst, supra,* were left wholly unimpaired by the ruling in the *Glasser* case.

Certain safeguards are essential to criminal justice. The court must be uncoerced, *Moore* v. *Dempsey,* 261 U. S. 86, and it must have no interest other than the pursuit of justice, *Tumey* v. *Ohio,* 273 U. S. 510. The accused must have ample opportunity to meet the case of the prosecution. To that end, the Sixth Amendment of the Constitution abolished the rigors of the common law by affording one charged with crime the assistance of counsel for his defense, *Johnson* v. *Zerbst,* 304 U. S. 458. Such assistance "in the particular situation" of "ignorant de-

fendants in a capital case" led to recognition that "the benefit of counsel was essential to the substance of a hearing," as guaranteed by the Due Process Clause of the Fourteenth Amendment, in criminal prosecutions in the state courts. *Palko* v. *Connecticut,* 302 U. S. 319, 327. Compare *Powell* v. *Alabama,* 287 U. S. 45, and *Betts* v. *Brady,* 316 U. S. 455. The relation of trial by jury to civil rights—especially in criminal cases—is fully revealed by the history which gave rise to the provisions of the Constitution which guarantee that right. Article III, § 2, paragraph 3; Sixth Amendment; Seventh Amendment. That history is succinctly summarized in the Declaration of Independence, in which complaint was made that the Colonies were deprived, "in many cases, of the benefits of Trial by Jury." But procedural devices rooted in experience were written into the Bill of Rights not as abstract rubrics in an elegant code but in order to assure fairness and justice before any person could be deprived of "life, liberty or property."

It hardly occurred to the framers of the original Constitution and of the Bill of Rights that an accused, acting in obedience to the dictates of self-interest or the promptings of conscience, should be prevented from surrendering his liberty by admitting his guilt. The Constitution does not compel an accused who admits his guilt to stand trial against his own wishes. Legislation apart, no social policy calls for the adoption by the courts of an inexorable rule that guilt must be determined only by trial and not by admission. A plea of guilt expresses the defendant's belief that his acts were proscribed by law and that he cannot successfully be defended. It is true, of course, that guilt under § 215 of the Criminal Code, which makes it a crime to use the mails to defraud, depends upon answers to questions of law raised by application of the

statute to particular facts. It is equally true that prosecutions under other provisions of the Criminal Code may raise even more difficult and complex questions of law. But such questions are no less absent when a man pleads guilty than when he resists an accusation of crime. And not even now is it suggested that a layman cannot plead guilty unless he has the opinion of a lawyer on the questions of law that might arise if he did not admit his guilt. Plainly, the engrafting of such a requirement upon the Constitution would be a gratuitous dislocation of the processes of justice. The task of judging the competence of a particular accused cannot be escaped by announcing delusively simple rules of trial procedure which judges must mechanically follow. The question in each case is whether the accused was competent to exercise an intelligent, informed judgment—and for determination of this question it is of course relevant whether he had the advice of counsel. But it is quite another matter to suggest that the Constitution unqualifiedly deems an accused incompetent unless he does have the advice of counsel. If a layman is to be precluded from defending himself because the Constitution is said to make him helpless without a lawyer's assistance on questions of law which abstractly underlie all federal criminal prosecutions, it ought not to matter whether the decision he is called upon to make is that of pleading guilty or of waiving a particular mode of trial. Every conviction, including the considerable number based upon pleas of guilty, presupposes at least a tacit disposition of the legal questions involved.

We have already held that one charged with a serious federal crime may dispense with his Constitutional right to jury trial, where this action is taken with his express, intelligent consent, where the Government also consents, and where such action is approved by the responsible judg-

ment of the trial court. *Patton* v. *United States,* 281 U. S. 276.[3] And whether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case. The less rigorous enforcement of the rules of evidence, the greater informality in trial procedure—these are not the only advantages that the absence of a jury may afford to a layman who prefers to make his own defense. In a variety of subtle ways trial by jury may be restrictive of a layman's opportunities to present his case as freely as he wishes. And since trial by jury confers burdens as well as benefits, an accused should be permitted to forego its privileges when his competent judgment counsels him that his interests are safer in the keeping of the judge than of the jury.

But we are asked here to hold that an accused person cannot waive trial by jury, no matter how freely and understandingly he surrenders that right, unless he acts on a lawyer's advice. In other words, although a shrewd and experienced layman may, for his own sufficient reasons, conduct his own defense if he prefers to do so, nevertheless if he does do so the Constitution requires that he must defend himself before a jury and not before a judge. But we find nothing in the Constitution, or in the great historic events which gave rise to it, or the history to which it has given rise, to justify such interpolation into the Consti-

---

[3] The ruling of the *Patton* case, namely, that the provisions of the Constitution dealing with trial by jury in the federal courts were "meant to confer a right upon the accused which he may forego at his election," 281 U. S. at 298, was expressly recognized and acted upon by Congress in the Act of March 8, 1934, c. 49, 48 Stat. 399, which empowered the Supreme Court to prescribe rules of practice and procedure with respect to "proceedings after verdict, *or finding of guilt by the court if a jury has been waived,* or plea of guilty, in criminal cases in district courts of the United States. . . ." (Italics added.) Compare H. Rep. No. 858, Sen. Rep. No. 257, 73d Cong., 2d Sess.

tution and such restriction upon the rational administration of criminal justice.

The right to assistance of counsel and the correlative right to dispense with a lawyer's help are not legal formalisms. They rest on considerations that go to the substance of an accused's position before the law. The public conscience must be satisfied that fairness dominates the administration of justice. An accused must have the means of presenting his best defense. He must have time and facilities for investigation and for the production of evidence. But evidence and truth are of no avail unless they can be adequately presented. Essential fairness is lacking if an accused cannot put his case effectively in court. But the Constitution does not force a lawyer upon a defendant. He may waive his Constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. *Johnson* v. *Zerbst,* 304 U. S. 458, 468–69.

Referring to jury trials, Mr. Justice Cardozo, speaking for the Court, had occasion to say, "Few would be so narrow or provincial as to maintain that a fair and enlightened system of justice would be impossible without them." *Palko* v. *Connecticut,* 302 U. S. at 325. Putting this thought in more generalized form, the procedural safeguards of the Bill of Rights are not to be treated as mechanical rigidities. What were contrived as protections for the accused should not be turned into fetters. To assert as an absolute that a layman, no matter how wise or experienced he may be, is incompetent to choose between judge and jury as the tribunal for determining his guilt or innocence, simply because a lawyer has not advised him on the choice, is to dogmatize beyond the bounds of learning or experience. Were we so to hold, we would impliedly condemn the administration of criminal justice in States deemed otherwise enlightened, merely

because in their courts the vast majority of criminal cases are tried before a judge without a jury. To deny an accused a choice of procedure in circumstances in which he, though a layman, is as capable as any lawyer of making an intelligent choice, is to impair the worth of great Constitutional safeguards by treating them as empty verbalisms.

Underlying such dogmatism is distrust of the ability of courts to accommodate judgment to the varying circumstances of individual cases. But this is to express want of faith in the very tribunals which are charged with enforcement of the Constitution. "Universal distrust," Mr. Justice Holmes admonished us, "creates universal incompetence." *Graham* v. *United States,* 231 U. S. 474, 480. When the administration of the criminal law in the federal courts is hedged about as it is by the Constitutional safeguards for the protection of an accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards (when such surrenders are as jealously guarded as they are by our rulings in *Patton* v. *United States, supra,* and *Johnson* v. *Zerbst, supra*), and to base such denial on an arbitrary rule that a man cannot choose to conduct his defense before a judge rather than a jury unless, against his will, he has a lawyer to advise him, although he reasonably deems himself the best advisor for his own needs, is to imprison a man in his privileges and call it the Constitution. For it is neither obnoxious to humane standards for the administration of justice as these have been written into the Constitution, nor violative of the rights of any person accused of crime who is capable of weighing his own best interest, to permit him to conduct his own defense in a trial before a judge without a jury, subject as such trial is to public scrutiny and amenable as it is to the corrective oversight of an appellate tribunal and ultimately of the Supreme Court of the Nation.

Once we reject such a doctrinaire view of criminal justice and of the Constitution, there is an end to this case. The *Patton* decision left no room for doubt that a determination of guilt by a court after waiver of jury trial could not be set aside and a new trial ordered except upon a plain showing that such waiver was not freely and intelligently made. If the result of the adjudicatory process is not to be set at naught, it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. Simply because a result that was insistently invited, namely, a verdict by a court without a jury, disappointed the hopes of the accused, ought not to be sufficient for rejecting it. And if the record before us does not show an intelligent and competent waiver of the right to the assistance of counsel by a defendant who demanded again and again that the judge try him, and who in his persistence of such a choice knew what he was about, it would be difficult to conceive of a set of circumstances in which there was such a free choice by a self-determining individual.

The order of the Circuit Court of Appeals must therefore be set aside and the cause remanded to that court for such further proceedings, not inconsistent with this opinion, as may be appropriate.

*So ordered.*

Mr. Justice Douglas, dissenting:

The *Patton* case (281 U. S. 276) held that a defendant represented by counsel might waive under certain circumstances trial by a jury of twelve and submit to trial by a jury of only eleven. In view of the strictness of the constitutional mandates, I am by no means convinced that it follows that an entire jury may be waived. But assuming

*arguendo* that it may be, I think the respondent should have had the benefit of legal advice before his waiver of a jury trial was accepted by the District Court. For I do not believe that we can safely assume that in absence of legal advice a waiver by a layman of his constitutional right to a jury trial was intelligent and competent in such a case as this.

Respondent was indicted under the mail fraud statute. 35 Stat. 1130, 18 U. S. C. § 338. It subjects to fine or imprisonment one who "having devised or intending to devise any scheme or artifice to defraud . . . shall, for the purpose of executing such scheme or artifice or attempting so to do, place, or cause to be placed, any letter, postal card, package, writing, circular, pamphlet, or advertisement . . . in any post-office . . . or other letter box of the United States." It would be unlikely that a layman without the benefit of legal advice would understand the limited nature of the defenses available under that statute or the scope of the ultimate issues on which the question of guilt usually turns. Without that understanding I do not see how an intelligent choice between trial by judge or trial by jury could be made.

The broad sweep of the statute has not been restricted by judicial construction. What might appear to a layman as a complete defense has commonly been denied by the courts in keeping with the policy of Congress to draw tight the net around those who tax ingenuity in devising fraudulent schemes. Thus an indictment will be upheld or a conviction sustained though the defendant did not intend to use the mails at the time the scheme was designed,[1] though no one was defrauded or suffered any loss,[2] though

[1] *United States* v. *Young*, 232 U. S. 155.

[2] *Cowl* v. *United States*, 35 F. 2d 794; *United States* v. *Rowe*, 56 F. 2d 747.

the defendant did not intend to receive [3] or did not receive [4] any benefit from the scheme, though the defendant actually believed that his plan would in the end benefit the persons solicited,[5] though the means were ineffective for carrying out the scheme,[6] and, perhaps, even though the mails were used not for solicitation but only in collection of checks received pursuant to the plan.[7] In other words, the defenses in law are few and far between. As a practical matter, if the mails were employed at any stage, the question of guilt turns on whether the defendant had a fraudulent intent. That is the significant fact. *Durland* v. *United States,* 161 U. S. 306, 313.

I think a layman normally would need legal advice to know that much. And it seems to me unlikely that he would be capable of appraising his chances as between judge and jury without such advice. Without it he might well conclude that he had adequate defenses on which a judge could better pass than a jury. With such advice he might well pause to entrust the question of his intent to a particular judge, rather than to a jury of his peers drawn from the community where most of the transactions took place and instructed to acquit if they had a reasonable doubt. On the other hand, if he had a full understanding of the issues, he might conceivably deem it a matter of large importance that he be tried by the judge rather than a jury. The point is that we should not leave to sheer speculation the question whether his waiver of a jury trial

---

[3] *Kellogg* v. *United States,* 126 F. 323.

[4] *Calnay* v. *United States,* 1 F. 2d 926; *Chew* v. *United States,* 9 F. 2d 348.

[5] *Pandolfo* v. *United States,* 286 F. 8; *Foshay* v. *United States,* 68 F. 2d 205.

[6] See *Durland* v. *United States,* 161 U. S. 306, 315.

[7] *Tincher* v. *United States,* 11 F. 2d 18; *Bradford* v. *United States,* 129 F. 2d 274.

But see *Dyhre* v. *Hudspeth,* 106 F. 2d 286; *Stapp* v. *United States,* 120 F. 2d 898.

was intelligent and competent. Yet, on this record we can only speculate, since all we know is that respondent professed to have "studied law" and that he lost a civil suit which he had prosecuted *pro se*. *McCann* v. *New York Stock Exchange*, 107 F. 2d 908. Furthermore, the right to trial by jury, like the right to have the assistance of counsel, is "too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." *Glasser* v. *United States*, 315 U. S. 60, 76. Moreover, as Judge Learned Hand stated in the court below, the answer to the question whether the waiver was intelligent should hardly be made to depend on "the outcome of a preliminary inquiry as to the competency" of the particular layman. If this constitutional right is to be jealously protected, there should be a reliable objective standard by which the trial court satisfies itself that the layman who waives trial by jury in a case like this has a full understanding of the consequences. *Dillingham* v. *United States*, 76 F. 2d 36, 39. At least, where the trial judge fails to inform him, the only safe and practical alternative in a case like the present one is to require the appointment of counsel. Only then should we say that the trial judge has exercised that "sound and advised discretion" which the *Patton* case required even before a waiver of one juror was accepted. 281 U. S. p. 312.

The question for us is not whether a judge should be trusted as much as a jury to determine the question of guilt. We are dealing here with one of the great historic civil liberties—the right to trial by jury. Article III, § 2 and the Sixth Amendment, which grant that right, contain no exception, though a few have been implied. See *Ex parte Quirin, ante,* p. 1. We should not permit the exceptions to be enlarged by waiver unless it is plain and beyond doubt that the waiver was freely and intelli-

gently made. The *Patton* case surrounds such a waiver with numerous safeguards even where, as in that case, the waiver was made by one who was represented by counsel. We should be even more strict and exacting in case the waiver is made by a layman acting on his own. Then the reasons for indulging every reasonable presumption against a waiver of "fundamental constitutional rights" (*Johnson* v. *Zerbst,* 304 U. S. 458, 464) become even more compelling.

The fact that a defendant ordinarily may dispense with a trial by admitting his guilt is no reason for accepting this layman's waiver of a jury trial. What the Constitution requires is that the "trial" of a crime "shall be by jury." Art. III, § 2. And it specifies the machinery which shall be employed if a plea of not guilty is entered and the prosecution is put to its proof. Moreover, we are not dealing here with absolutes. Normally, admission of guilt could properly be accepted without more, since ordinarily a defendant would know whether or not he was guilty of the crime charged. But there might conceivably be an exception, where, for example, the issue of guilt turned not only on the admitted facts but upon the construction of a statute. Each case of necessity turns on its own facts. Nor is it a sufficient answer to say that if legal advice is required for a waiver of trial by jury, then by the same token a layman representing himself could not exercise his own judgment concerning any matter during the trial with respect to which a lawyer might have superior knowledge. Whether the waiver of counsel for purposes of the trial meets the exacting standards of *Johnson* v. *Zerbst* is one thing. Whether that dilution of constitutional rights may be compounded by a waiver of trial by jury is quite another. It is the cumulative effect of the several waivers of constitutional rights in a given case which must be gauged. Nor can I accede to the suggestion of

the prosecution that a layman's right to waive trial by jury is such an important part of his high privilege to manage his own case that its exercise should be freely accorded. That argument is faintly reminiscent of those notions of freedom of choice and liberty of contract which long denied protection to the individual in other fields.

MR. JUSTICE BLACK and MR. JUSTICE MURPHY join in this dissent.

MR. JUSTICE MURPHY:

I join my brother DOUGLAS, but desire to add the following views in dissent.

The Constitution provides: "The Trial of all Crimes, . . . shall be by Jury; . . ." (Article III, § 2), and: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, . . ." (Amendment VI). Because of these provisions, the fundamental nature of jury trial,[1] and its beneficial effects as a means of leavening justice with the spirit of the times,[2] I do not concede that the right to a jury trial can be waived in criminal proceedings in the federal courts. Whatever may be the logic of the matter, there is a considerable practical difference between trial by eleven jurors, the situation in *Patton* v. *United States*, 281 U. S. 276, and trial to the court, and practicality is a sturdy guide to the preservation of Constitutional guaranties.

But if it is assumed that jury trial, the prized product of the travail of the past, can be waived by an accused,

---

[1] Compare *Glasser* v. *United States*, 315 U. S. 60, 84–85, and *Jacob* v. *New York City*, 315 U. S. 752.

[2] This is admirably stated by Judge Learned Hand below, 126 F. 2d at 775–776.

there should be compliance with rigorous standards, adequately designed to insure that an accused fully understands his rights and intelligently appreciates the effects of his step, before a court should accept such a waiver. Among those requirements in the case of a layman defendant in a criminal proceeding where the punishment may be substantial, as in the instant case, should be the right to have the benefit of the advice of counsel on the desirability of waiver. Of course the capacity of individuals to appraise their interests varies, but such a uniform general rule will protect the rights of all much better than a rule depending upon the fluctuating factual variables of the individual case which are often difficult to evaluate on the basis of the cold record. In my opinion the Constitution requires this general rule as an absolute right if a jury is to be waived at all.