### SMITH et al. v. UNITED STATES.
#### No. 12006.

United States Court of Appeals
Ninth Circuit.
Feb. 28, 1949.

182

William Roy Ives and Stanley L. Avery, both of Los Angeles, Cal., for appellants.

James M. Carter, U. S. Atty., Norman W. Neukom, Cameron L. Lillie and Ernest Tolin, Assts. U. S. Atty., all of Los Angeles, Cal., for appellee.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellant Smith, alias Corie, was convicted by a jury of robbing a Los Angeles branch of the Bank of America on December 4, 1947, by the use of a dangerous weapon. The bank was a member of the Federal Reserve System. Appellant Montez was convicted by the same jury of aiding and abetting him. Both men were charged with a violation of 12 U.S.C.A. § 588b [now 18 U.S.C.A. § 2113], subsections (a) and (b). Subsection (a) pertains to the robbery of a Federal Reserve Bank by force and violence and the pertinent portion provides a maximum penalty of a fine of 1,000 or twenty years imprisonment, or both. Subsection (b) increases the maximum penalty to $10,000 and/or twenty-five years when an assault by the use of a dangerous weapon is committed in the course of such robbery. Smith, because of his prior criminal record received the maximum of twenty-five years while Montez received a twenty year sentence.

At approximately 3 p. m. on the above date, the bank was robbed of $2,900 in bills of five, ten, twenty, fifty and one-hundred dollar denominations. The robber, dressed in a soiled beige raincoat and needing a shave and haircut, stood in line before a teller's window and when his turn came before the teller displayed a .45 caliber automatic, which had rust and pit marks on the left side of the barrel, from under his raincoat and demanded money which he obtained and hurriedly left.

At the trial held several months later, the bank teller positively identified Smith as the robber although he had hesitated to do so at the police "show-up" because, as he explained at the trial, the lights in the courtroom more nearly approximated the light in the bank and brought out a certain shade in the robber's hair which the bright lights of the police show-up did not. A second witness who was standing directly behind the robber and who moved to an adjacent window during the actual robbery, positively identified Smith as the robber not only at the trial but at the police show-up and from his picture. A third witness,

who was third in line, was "very confident" that Smith was the robber but said, "I believe I shouldn't swear [to it], because I did not get a full view of his face." The teller and second witness testified as to the type and condition of the weapon and all three testified as to the condition, type, color, etc., of the raincoat and of the robber's personal appearance.

A caliber .45 automatic, with pit and rust spots on the left side of the barrel was found in Montez' home as was a beige raincoat of the same type, material, and soiled condition as that used by the robber. Montez admitted ownership of both articles and the witnesses identified both the raincoat and gun insofar as, practically, it was possible to do so.

Government witness Jobe, an investigator for a Los Angeles attorney, testified that both Smith and Montez visited him in his office between 3:10 and 3:20 the afternoon of the robbery. This office was a very short distance from the bank, and Smith, who was wearing a leather jacket, needed a shave and haircut at that time. Neither of the two men had a raincoat. Government witness Patrick testified that on the evening of the robbery he met Smith and Montez at the home of one Royal and while there Smith displayed a roll of fives, tens, twenties, and one-hundred dollar bills and said that it contained about $3,000. Patrick also saw Montez slip a caliber .45 automatic under a sofa cushion. Montez, when apprehended, first completely denied knowing any Smith or Corie, then admitted the acquaintanceship but averred that at the time of the robbery he had been watching a specific moving picture in a specific theater. Finally he stated that both he and Smith had visited Jobe at about 1:30 on the afternoon of the robbery and had not left until after the time of the hold-up. Smith agreed with this latter explanation. Smith's other defense was that he was always neat and clean shaven and had visited Royal the night of December 2 where he met Patrick rather than December 4, also that he carried a .38 revolver rather than a .45 and had never handled Montez' weapon. Suffice it to say that the evidence clearly permitted the jury to find both appellants guilty beyond a reasonable doubt. The evidence is not "as consistent with innocence as with guilt," as appellants dubitatively urge. The denial of a directed verdict of acquittal was not error.

Appellants allege further error of the trial court in admitting testimony relating to other acts of criminal misconduct which they contend was so prejudicial that this court should reverse the conviction even though this question was never brought to the attention of the trial judge either by objection, by the motions for acquittal at the termination of the Government's case, by request for cautionary instructions, (the record discloses no proposed instructions nor objections to the instructions given) or by the motions for a new trial.

The Government rather persuasively answers that not only was the evidence unobjected to, but was first brought before the jury by appellants themselves.

On cross-examination of Government witness Patrick, the defense brought out that Patrick had met Smith and Montez on December 5, 1947 when he (Patrick) went to Compton, California to meet Henry Royal for the purpose of being instructed in the proper art of "robbing a person." Smith, armed with a .38 revolver, was one of those who had carried a certain plan of robbery into execution, and the victim was "a man who owned a check cashing agency." Montez also took part in the "job."

Government witness Jobe testified on direct, without objection, that he had met both appellants in his office about three weeks before the robbery and had been told that Smith was out on parole, was "hot" in four or five states, and was there to see Jobe in order to determine whether there was any way of fixing his parole violation to prevent his return to Folsom prison. After a number of questions were asked and answers given, one of the defense counsel objected on grounds of relevancy, but was overruled. Cross-examination disclosed that Jobe had met and conversed with appellants several days after the bank robbery. On re-direct, occurred that of which appellants now complain. Jobe was asked about the conversation carried on at this meeting and the following resulted:

"Q. (By Government counsel) What was your conversation? A. Well sir, I had—I think I had 60 or 70 cents laying out on the table there, and they were kidding me. Montez reached over and picked up the change, and I said, 'Wait a minute. Don't take my cigarette money.'"

So he said—he took some more money and threw it out on the table. He said, 'I would leave you some more, but that is all I got, Mr. Jobe.' He said, 'We'—I don't know; they done something and they didn't make no money; four of them, only seven and a half apiece, or seven—$28. split four ways was $7.00 and that was all they had.

"Q. What was this 'something' they did? A. Robbed somebody; robbed somebody. Knocked some old man in the head with a pistol and robbed some collector or something. I don't know what it was.

"Mr. Avery (counsel for Montez). Objected to unless he is relating a conversation with one of the defendants."

The court thereupon instructed the jury to disregard what had been previously stated and said:

"What did they tell you?" A. They told me they went out and got a tip on some man going to the bank. His wife was walking four or five steps behind him, or some other thing, and Bill Montez told me Corie [Smith] was crazy, said Corie hit this old man over the head with a pistol and the man went down, and Bill Montez said, 'The bullet barely missed my head. He almost killed me.'

"I said 'Corie, you shouldn't be running around rodded up like that.'

"Bill Montez and him gets in some kind of a argument about him carrying a gun all the time.

"He said, 'We ain't got no more money, Mr. Jobe. We got $28.00 off the job. There was four of us on it, and we got $7.00 apiece.'

"In short, that is all I remember about the conversation."

 It is without question true that in a criminal case the ultimate issue is the guilt or innocence of the accused, to be determined by a fair trial and not the competence of counsel, but it cannot serve the purpose of justice to permit a defendant to prosecute one theory in the trial court and, finding it unsuccessful, not only to substitute another on appeal but to claim error arising out of that which he himself has invited.[1] The admitted normal rule is that an appellate court will not consider matters which are alleged as error for the first time on appeal, and this is true of criminal as well as civil cases.[2] However, an exception exists in criminal cases where the alleged error would result in a manifest miscarriage of justice,[3] or would "seriously affect the fairness, integrity, or public reputation of judicial proceedings."[4] The appellate tribunal will examine the record sufficiently to determine whether such has occurred.[5]

The question placed before us in this case is whether the admission of evidence without objection, of other non-related, specific acts of criminal misconduct, was so prejudicial as to demand reversal. The normal rule, excepting possibly sex offenses, is that evidence of such acts is not admissible for the sole purpose of tending to prove the defendant committed the crime charged, i. e., to show more likelihood of guilt.[6] The inquiry is not rejected because such evidence is irrelevant,[7] but to the contrary, it is said to weigh too much

[1] See Shields v. United States, 1926, 273 U.S. 583, 586, 47 S.Ct. 478, 71 L.Ed. 787.

[2] Alberty v. United States, 9 Cir., 1937, 91 F.2d 461; Joseph v. United States, 9 Cir., 1944, 145 F.2d 74, certiorari denied 323 U.S. 776, 65 S.Ct. 188, 89 L.Ed. 620.

[3] Moore v. United States, 5 Cir., 1947, 161 F.2d 932; Giles v. United States, 9 Cir., 1944, 144 F.2d 860; Dillingham v. United States, 5 Cir., 1935, 76 F.2d 36.

[4] United States v. Atkinson, 1936, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed.

555; United States v. Socony-Vacuum Oil Co., 1939, 310 U.S. 150, 239, 60 S.Ct. 811, 84 L.Ed. 1129.

[5] United States v. Atkinson, supra; Clyatt v. United States, 1905, 197 U.S. 207, 25 S.Ct. 429, 49 L.Ed. 729; Giles v. United States, supra; Marco v. United States, 9 Cir., 1928, 26 F.2d 315, 316.

[6] See Greer v. United States, 1918, 245 U.S. 559, 38 S.Ct. 209, 62 L.Ed. 469; 1 Wigmore, Evidence § 57 (3d ed., 1940); Model Code of Evidence, § 311 (1942).

[7] Wigmore, supra, § 55.

with the jury to over-persuade them so as to prejudge one with a bad general record and so deny him fair opportunity to defend against a particular charge.[8] It affords the jury an extraneous ethical justification for a finding of guilt.

However, the doctrine above stated has not been carried so far as to exclude evidence which has a direct tendency to prove the particular crime for which the accused is indicted, thus, if relevancy can be shown on any other basis than probability of guilt from criminal disposition, such evidence is admissible with the right in the accused to a cautionary instruction if he so requests. The record discloses no such solicitation by the appellants.

The common *exceptions* to the normal rule above stated are: (1) motive, (2) intent, (3) absence of mistake or accident, (4) underlying scheme or design embracing the commission of two or more crimes so related to each other that proof of one logically tends to establish the commission of the crime charged, (5) identity, i. e., the evidence sought to be admitted must tend to show that the person who committed the crime charged is the accused even though incidentally, the defendant is proven guilty of other crimes.[9] Also, if the defendant attempts to prove his innocence by evidence of good reputation, the prosecution may, in rebuttal, present evidence of bad reputation, and in doing so, present evidence of specific criminal acts.[10] The only "exception," (among those stated above) within which the contested evidence in this case could possibly fall is to show criminal intent. However, the "intent" of Smith (once identified as the robber) seems conclusive beyond all doubt, thus, as to him, such evidence would appear to be cumulative and subject only to misuse by complicating the issues and poisoning the minds of the jurors.[11]

The intent of Montez is clearly and realistically in issue, and subservient to the rule that if the action of the trial judge is valid on any ground, he shall be upheld on appeal, we hold it well within his discretion to permit such evidence to show the intent of appellant Montez. The other crime, although not part of a basic plan, was also a robbery by force and violence, committed with a dangerous weapon, and within one or two days of the crime charged. To a lesser degree, it also tends to show his identity as an assistant to Smith in this crime since it was in the company of Smith that such other crime was committed.[12]

As both appellants were tried together, and the evidence was admissible as to Montez, Smith's only safe course lay in the dubious haven of a limiting instruction. This course was neither sought nor thought of. However, to leave our decision rest here would be to evade the very question the parties most vigorously argue.

Had Smith been tried alone, and proper and timely objections been made and denied, we might have been constrained to hold that a reversal was in order *if* appellants had not themselves first introduced evidence of other crime. Whether the allowance of inadmissible evidence of extrinsic criminal acts, even without objection, would be an abdication by the trial judge of his function to control and guide the conduct of the trial by a surrender of this function to counsel, is not the ultimate question before us.[13] The question is, coupled with the fact of non-objection, whether a defendant may, by cross-examination, bring in evidence of other crimes and then complain for the first time on appeal either

---

[8] Michelson v. United States, 1948, 335 U.S. 469, 69 S.Ct. 213, and cases cited.

[9] Burge v. United States, 26 App.D.C. 524; Martin v. United States, 1942, 75 U.S.App.D.C. 399, 127 F.2d 865; United States v. Klass, 3 Cir., 1947, 166 F.2d 373, 377.

[10] Michelson v. United States, note 8, supra.

[11] Burge v. United States and Martin v. United States, 127 F.2d at page 870, note 9, supra. Some courts permit such evidence to show intent, even though such be conclusively proven on the basis that it cannot be determined what will satisfy a jury beyond all reasonable doubt, and thus a prosecutor should be permitted to marshal all admissible evidence.

[12] Parenthetically, the jury was instructed on the other crime as going to the intent of Smith. Montez was not mentioned.

[13] See Dillingham v. United States, 5 Cir., 1935, 76 F.2d 36, 39.

that the prosecution has "amplified" the evidence of that crime (a contention of the Government) or has brought forward inadmissible evidence of a new crime. The purpose of the rule which appellants now espouse is to prevent prejudice in the minds of the jury. If they themselves cause whatever prejudice the rule was designed to prevent, it is obvious that if the prosecution later violates the rule, and the trial judge through error admits it, whatever prejudice is *then* caused is merely cumulative even though the prosecution's evidence is that of a new crime (which we do not consider to be the case here). We do not think that it rises to that degree of prejudice which would permit us to find a miscarriage of justice in this case.

We must emphasize that, contrary to exhortations of appellee, we do not test "manifest injustice" by whether or not *we* are convinced of appellants' guilt. The test is rather whether the now contested evidence, in the light of all the facts of the case before the court, so improperly prejudiced appellants in the eyes of the jury as to deny them a fair trial and thus require us to reverse, even though, *we* might feel that if the contested evidence was deleted, the jury would still have returned a finding of guilt.[14]

Appellants also complain, (also for the first time on appeal), that the trial judge erroneously explained to the jury the use of certain verdict forms. It is urged that while he correctly stated that there were two degrees of the crime charged, he led the jury to believe that if it found appellants guilty of one, it could not find them not guilty of the other. Reading the instructions as a whole, we do not so find. The instructions specifically and correctly stated:

" * * * But if you find that the defendant Smith committed the robbery and that the defendant Montez aided and abetted therein but that there was neither an assault as that has been defined to you, nor

that the life of the teller was put in jeopardy by the use of a dangerous weapon, then you may *only* find the defendants guilty of violating Section 588b, subdivision (a), which is a lesser offense than the offense as charged." (Emphasis supplied.)

In view of the above, we find that the language complained of which was solely directed at the use of the forms, if ambiguous at all, was not sufficiently so as to create the degree of prejudice necessary to reverse a conviction because of uncomplained error in the instructions.[15] It might easily be questioned whether, on the facts of this case, an instruction as to the lesser degree was necessary since the crime was manifestly and uncontradictorily within the scope of the greater.

Affirmed.

---

[14] See Meeks v. United States, 9 Cir., 1947, 163 F.2d 598; Bollenbach v. United States, 1945, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314; United States v. Antonelli Fireworks Co., 2 Cir., 1946, 155 F.2d 631 and Judge Frank's dissent, beginning page 642.

[15] See Rule 30, Rules Criminal Procedure, 18 U.S.C.A.