Joseph Orby SMITH, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 1310–60.

United States District Court
S. D. California,
Central Division.

April 13, 1961.

Laughlin E. Waters, U. S. Atty., and Thomas R. Sherican, Asst. U. S. Atty., Chief of Criminal Division, and Timothy M. Thornton, Asst. U. S. Atty., Los Angeles, Cal., for the United States.

Paul Augustine, Jr., Alhambra, Cal., for petitioner.

HALL, Chief Judge.

The matter is before the Court on a Motion filed November 18, 1960, under 28 U.S.C. § 2255 to vacate judgment of conviction and set aside the sentence in case No. 19,993–CR. D.C., 174 F.Supp. 828.

Petitioner Joseph Orby Smith was first indicted in case No. 19,754–CR. for unlawful flight to avoid prosecution. He was then indicted on February 11, 1948, in case No. 19,834–CR. for robbery of a National bank and assault with a dangerous weapon.

The two cases were before Judge O'Connor, now deceased, who at that time held the criminal calendar. The records show that on March 16, 1948, Judge O'Connor appointed Herbert L. Hirson as attorney for defendant, and continued the case to March 22, 1948, for plea. The same thing occurred in Case No. 19,834–CR.

On March 16, 1948, Attorney Hirson wrote a letter to Judge O'Connor asking that he be relieved as attorney for Smith,

and on March 17, 1948, Judge O'Connor appointed Edward C. Fruetel, and according to handwritten notes of Judge O'Connor, that appointment was accepted by the defendant, Joseph Orby Smith, and Mr. Hirson was relieved.

On April 21, 1948, the defendant, together with one William Joseph Montez, was charged in a superseding indictment in Case No. 19,993–CR. with robbery of a National bank and assault with a dangerous weapon, being the same bank robbery as charged in Case No. 19,834–CR.

In the meanwhile, on April 12, 1948, Case No. 19,754–CR. was set for trial on April 27, 1948, before Judge Beaumont. But with the superseding indictment returned on April 21, 1948, in Case No. 19,-993–CR., that trial date was vacated, and on April 26, 1948, Case No. 19,993–CR. against the above-named petitioner and his co-defendant Montez was set for trial on May 11, 1948, before Judge Beaumont.

On April 11, 1948, the case was regularly transferred to the undersigned Judge, under local rules; was thereafter tried; a verdict of guilty was rendered as to both defendants,[1] and sentence was pronounced by the Court on May 14, 1948.

Smith appealed his conviction, and it was affirmed—9 Cir., 173 F.2d 181.

Smith was present at the trial on a Writ of Habeas Corpus ad Prosequendum because he was in the custody of the State of California which took possession of him immediately after the sentence on May 14, 1948, and he was committed to and kept at a California Penal Institution until the expiration of his State sentence when he was transferred to Federal custody.

It was not until October, 1956, more than eight years after his trial and sentence in this court, that the prison authorities, who had Smith under constant observation, concluded that he was insane, and they transferred him to the United States Medical Center at Springfield, Missouri.

There have been some 70 communications written by Smith, either by hand or on the typewriter, all in the nature of petitions and demands which have come to this court since he filed his first petition in personam under 28 U.S.C. § 2255 on March 15, 1957. In that petition he said that he was then committed to the United States Medical Center for Federal Prisoners at Springfield, Missouri, as a mental patient. The court being of the opinion that he was a prisoner who was mentally incompetent, felt he could not act for himself, and denied the motion, upon which Petitioner took a propria-personam appeal, and the Appellate Court reversed this court, and directed this court to hold a hearing. [9 Cir., 259 F.2d 125].

The Court then being confronted with the problem of how to hold a hearing for one who was insane and who was proceeding in personam, concluded that, it being a civil proceeding, the Federal Rules of Civil Procedure would apply. The Court then appointed Petitioner's Mother as guardian ad litem under F.R. Civ.P. 17(c). She thereafter abandoned the petition and requested the Court to order Petitioner returned to the U. S. Medical Center at Springfield, Missouri, which was done.

Petitions, letters and demands of various nature, however, continued, and still do continue, to come to this court and to the Appellate Court.

On March 2, 1960, Beatrice Smith (Petitioner's mother) as guardian ad litem, filed a new proceeding under 28 U.S.C. § 2255 which was given case No. 233–60–PH of this court. The Court, in the meanwhile, on the 2255 petition filed in Case No. 19,993–CR., had on March 6, 1959, adjudged Smith to be incompetent, after a psychiatric examination by a psychiatrist appointed by the court and one selected by Joseph Orby Smith. The

---

1. Case No. 19,834–CR. having been superceded by the indictment in Case No. 19,993–CR., the Indictment in case No. 19,834–CR. was dismissed, as was also case No. 19,754–CR.

Court also appointed counsel for the guardian ad litem.

On August 23, 1960, after another competency hearing on August 8, 1960, the Court found Joseph Orby Smith to be then competent, able to understand the proceedings, and to assist counsel in his defense, and struck the motion of Beatrice Smith as guardian ad litem in Case No. 233–60–PH, as well as the in personam motion which Smith had filed himself.

Thereafter on November 18, 1960, counsel Paul Augustine, Jr., who had been retained by Smith himself, filed the within proceeding.

The bases upon which the present petition rests are:

(1) That perjured testimony was knowingly used by the prosecutor, Cameron L. Lillie, Assistant U. S. Attorney, now deceased;

(2) That petitioner was not furnished with a list of the witnesses to be produced at the trial in accordance with 18 U.S.C. § 3432;

(3) That the F.B.I. Agents were friendly to the bank teller who was the principal identification witness, and that such activities were improper;

(4) That petitioner was insane at the time the offense was committed and at the time of trial and sentence, and that he was thus unable to understand the proceedings, or to assist counsel in his defense;

(5) That petitioner was deprived of effective representation of counsel because counsel was appointed only 15 days before date of trial, and he therefore did not have an opportunity to adequately prepare a defense;

(6) That counsel who was appointed for petitioner was incompetent, listing his acts which are alleged to demonstrate the incompetency of Smith's counsel.

The United States filed a response to this petition, and the matter was set for hearing on December 13, 1960, at 10:00 A.M. It was thereafter continued to January 17, 1961, at 10:00 A.M., at which time the Court proceeded to hear the matter and take evidence.

In the meanwhile, the Petitioner, on his own account in personam, filed a handwritten motion for writ of prohibition in the Appellate Court to prevent this court from proceeding with the hearing on his last filed Section 2255 petition. This matter was brought to the attention of this Court when a copy of the Order of the Appellate Court denying the petition for leave to file Petition for Writ of Prohibition was forwarded here to the Clerk's office.

In the Petition filed with the Appellate Court, petitioner contended that when he was examined by the psychiatrist, upon whose report this Court based its conclusions that he was then mentally competent and sane and could understand the proceedings and assist counsel in his defense, he had been placed "on a stimulant depressent drug (Artine) three (3) times daily which controled the petitioner in a rational state."

When the matter was set on January 17, 1961, the Court at that time continued the hearing to January 20, 1961, and directed that the psychiatrists—four by this time—who in the meanwhile had examined petitioner, be present on that date and be prepared to examine petitioner that morning and determine whether or not he was then, on that date, sane, competent, able to understand the proceedings, and assist his counsel in his defense.

At the beginning of the hearing petitioner, by himself and by his counsel, consented to the order of the court directing the four psychiatrists to examine petitioner at one time, with a court reporter present, and petitioner's attorney, if he desired, before the Court would proceed further with the hearing.

The four psychiatrists proceeded to conduct the examination which took about an hour; whereupon each of them were called to the witness stand, and each testified that petitioner was then, on that day, presently competent, sane, able to understand the proceedings, and able to assist his counsel in his defense.

The Court called petitioner to the stand, and inquired of him if he knew what the proceedings were, what had occurred on that morning, and what was expected to be done that day, all questions of which he answered sanely and intelligently. Thereupon the Court found, as a matter of fact, that petitioner was, on that day, sane, competent, and able to understand the proceedings, and proceeded to take testimony on the merits of the petition, which testimony was concluded on that day, with counsel for petitioner given twenty (20) days in which to file a brief, and counsel for respondent government ten (10) days thereafter.

Immediately after the hearing, petitioner wrote a letter asking to have his counsel removed as his attorney, and on January 26, 1961, by handwritten letter, petitioner requested dismissal of the action.

■ In view of the fact that issue had been joined by the filing of the government's response or answer, petitioner is without authority to dismiss the action, and the United States has not consented to its dismissal. [F.R.Civ.P. 41(a) ].

Petitioner's counsel did not file a brief, and after his time for filing the same had expired, he told this Court, upon inquiry, that he did not intend to file a brief. The United States filed a brief, and the matter is now ready for decision.

Taking petitioner's contentions set forth in his petition above-mentioned in order—

■ (1) No evidence was offered in support of his contention that the government knowingly used perjured testimony at the time of trial, except an effort again to get the teller Glowczewski to admit he had made a mistake in identification, which Glowczewski vigorously denied. The charges in the Petition that Glowczewski was flown to Chicago to identify Defendant Smith on or about January 5, 1948, are not true. No one was flown from Los Angeles to Chicago to identify Smith in connection with the proceedings in this court at any time. The court finds that the identification of Smith by Glowczewski and all of Glowczewski's testimony at the time of trial and on this hearing was and is true.

■ (2) There was nothing to the point that Petitioner was not furnished a list of witnesses. 18 U.S.C. § 3432 provides only that a list of witnesses shall be furnished in capital cases. The Indictment in Case No. 19,993–CR. was not a capital case.

■ (3) No testimony whatsoever was produced to show that the F.B.I. agent in charge of the investigation had become a good friend of Mr. Glowczewski, or that Mrs. Glowczewski had ever said so, and the Court finds that the allegations contained in the petition in that respect are untrue.

■ (4) No evidence whatsoever was produced to show that Petitioner was insane, either at the time the offense was committed or at the time of trial and sentence, and the Court finds from the evidence introduced that Petitioner was sane at the time the offense was committed, and that he was sane and so mentally competent as to understand the proceedings against him and to assist his counsel in Case No. 19,993–CR. prior to, at, and during the time of trial.

It is to be noted that petitioner was under constant observation while in the California Penal Institution and in the Federal Institution, and it was not until October, 1956, eight years after the trial that he was found to be mentally incompetent and insane, and the court so finds.

■ (5) There is no evidence to support petitioner's contention that the counsel appointed for him, Edward C. Fruetel, had no opportunity to prepare his defense. The record conclusively shows that counsel was appointed on March 17, 1948, in Case No. 19,834–CR., which case involved the same bank robbery as involved in Case No. 19,993–CR., and when case No. 19,993–CR. was filed as a superseding indictment for the same bank robbery the same counsel was appointed to defend petitioner. Counsel thus had almost 30 days in which to prepare the case. On the witness stand, Mr.

Fruetel produced his records and files showing exhaustive preparation for the trial of the case. He had interviewed the defendant Smith several times, had listened to his story, prepared a typewritten list of questions to petitioner, prepared and researched instructions, prepared outlines of voir dire examinations of jurors, and outlines of examinations of witnesses. He conducted extensive legal research, and had a private investigator interview witnesses, and he, himself, attempted to interview witnesses whose names were given to him by defendant Smith.

The charge of incompetence on the part of counsel appointed for defendant Smith was wholly unsubstantiated. The undersigned presided at the trial of the case, and from his own observation of the trial there was nothing that could have been done at the trial that was not done by his lawyer, and Mr. Fruetel, on the witness stand, stated that in retrospect and in reviewing the case, he knew of nothing that could have been done differently or better. Throughout the trial the petitioner followed the proceedings intently, and wrote constant notes to his lawyer, which were produced on this hearing—some 20 pages. An examination of the notes shows no sign of incompetency, but on the contrary, a high degree of understanding of the trial and the nature and effect of the evidence and court rulings.

It is regrettable that any credence must be given to these charges of incompetence of counsel made by a defendant whose whole adult life has been one of crime and who does not like a given result. Defendant's counsel here was a member of one of the largest law firms in California. He was a graduate magna cum laude from the University of Iowa, and cum laude from Harvard. Thereafter he entered the Armed Services, and commenced active practice upon his return from the service in Los Angeles with the firm of O'Melveny & Myers in 1946, with whom he has remained ever since. His work had not been trial work, but had been mostly civil cases. Since that time his work has been mostly civil work.

Mr. Fruetel was called to the witness stand, and while it is my view that the mere charge of incompetency by a defendant waives the attorney-client privilege, the Court nevertheless took the precaution to question defendant and his counsel, and each stated they waived completely any privilege between attorney and client so far as Mr. Fruetel's testimony was concerned.

There is no merit to any of petitioner's contentions. He has been allowed to proceed from time to time in forma pauperis. His allegations are frivolous and malicious, yet he has been permitted to consume many hours of this court's time, as well as that of the Appellate Court, and imposition on appointed counsel has exceeded all bounds of reason. Transcripts at great expense have been furnished him at the cost of the government, as well as many trips to and from Springfield, Missouri.

The Court finds, as a matter of fact, that the representation given to the defendant Smith by Mr. Fruetel prior to, at, and during the time of trial was not only that of a competent and effective counsel, but that Mr. Fruetel exhibited great industry and skill in the representation of this defendant at all times.

This case is illustrative of a tendency which is beginning to appear, namely, that a Judge either acquit a defendant, give him the minimum sentence or probation, or be faced with innumerable unfounded demands, petitions, motions and the like, containing frivolous and malicious matter, so long as the sentence runs. This is not the only case of this nature before this court.

Good cause appearing,

It is ordered, adjudged and decreed that the Motion of Petitioner be, and it is hereby denied.

This will serve as Findings of Fact and Conclusions of Law under Rule 52 (a), Federal Rules of Civil Procedure.