Jackie Lynn STEVENSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F-84-233.

Court of Criminal Appeals of Oklahoma.

June 24, 1985.

Michael D. DeBerry, DeBerry & Cauthron, Idabel, for appellant.

Michael C. Turpen, Atty. Gen., Tomilou Gentry Liddell, Asst. Atty. Gen., Deputy Chief, Crim. Div., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant Jackie Lynn Stevenson, Lonnie Leon Young, and Larry Eddie Young were conjointly charged on September 2, 1981, in the District Court of McCurtain County, Case No. CRF–81–166, with First Degree Murder (21 O.S.1981, § 701.7) and Armed Robbery (21 O.S.1981, § 801). On April 12, 1982, the appellant was granted a change of venue to Pushmataha County. Jury trial began there on May 17, 1982. The jury returned a verdict of guilty and sentenced the appellant to ninety-nine years' imprisonment for Armed Robbery and to death for First Degree Murder. The trial court entered Judgment and Sentence in accordance with the jury's verdict, and the appellant lodged an appeal to this Court.

A recitation of facts regarding the murder and robbery is unnecessary because we must reverse and remand this case for a new trial. The appellant herein was forced to proceed to trial without an attorney. The procedural facts follow.

After announcing ready for trial, the appellant's court-appointed attorney Jim McClendon informed the trial judge, the Honorable G. Gail Craytor, that the appellant was not satisfied with his performance and did not want McClendon to represent him. Without inquiring into the reasons for dissatisfaction,[1] Judge Craytor granted a one-week continuance to enable the appellant, who was confined in jail, to retain counsel but warned that even if the appellant did not have an attorney, trial would begin the following Monday. Judge Craytor made good his word, and trial com-

---

1. McClendon advised the court that having to represent a client who did not want him [McClendon] to represent him could change his attitude about the case.

menced the following Monday although the appellant had no attorney.[2]

Almost throughout voir dire, the appellant stood mute, occasionally interjecting that he needed and wanted an attorney. McClendon did not question any of the prospective jurors. When the court called for argument on a motion to suppress, the appellant again stood mute and McClendon asked the court for clarification of his role as follows:

*BY MR. McCLENDON:* Your Honor, I don't know if my status is clear in the record. Last Monday I asked permission of the Court to withdraw. I think the Court at that time took my motion and request under advisement and ordered me to return on the 24th, only for the purpose of answering questions and advising the defendant on legal matters. On the 17th he requested that I not represent him and asked the Court for permission for time to employ another attorney. Apparently, he has been unable to as he has advised the Court yesterday. He still advised the Court yesterday that he did not want me to represent him and that is still the position that he takes. I would again ask the Court permission to withdraw as his attorney and will tell the Court that I will make myself available to him if he has any questions, but what is coming up now is a mixed question of fact and law and I think I could advise him, but I don't want to get into a position of making argument to the Court about whether or not the search, if there was one, or seizure, which there was, was legal. When we filed the motion, we didn't think the seizure was legal. I don't think there was a search, but there was a seizure. I think for the purpose of the record, I need to make it clear what my position is. I am not representing Mr. Stevenson, so I can't make any announcement or any argument that would bind him. If the Court would allow me permission to withdraw as his attorney, but order me to be available here for him, if he has any questions he wants to ask me, and that would define for the record what my position is, and it would get me out of a bind and get him out of a bind.

*BY THE COURT:* Do you have any comment on that, Mr. Stevenson? Do you want Mr. McClendon to represent you in any manner whatsoever?

*BY MR. STEVENSON:* No.

*BY THE COURT:* Do you want him to question witnesses either on a motion or in the course of the trial?

*BY MR. STEVENSON:* No.

*BY THE COURT:* Very well. At this time let the record reflect that Mr. McClendon will be allowed to withdraw as counsel for the defendant and it will be the order of the Court that Mr. McClendon be available in the courtroom for any legal questions by the defendant, but he is not required to function in any manner as an attorney or assume any liability or responsibility for the defense of this defendant based on the defendant's request that he not represent him in this matter. . . .

Tr. 238–39.

After twelve jurors and two alternates had been "passed for cause", McClendon approached the bench and told the judge that the appellant asked him whether he could or wanted to represent him. McClendon stated that he did not see how he could since one of the most important parts of trial—selecting a jury—was over. The court gave McClendon and the appellant twelve minutes to discuss the situation. When court reconvened, the judge stated that McClendon was not of counsel but was present to answer any legal questions the appellant might have.

Shortly thereafter, Vester Songer, an attorney from Hugo, Oklahoma, made an appearance and informed the court he would

---

**2.** Judge Craytor initially denied McClendon's request to withdraw as counsel but told McClendon that he would not be required to perform as counsel. In effect, Judge Craytor appointed McClendon as stand-by counsel for a pro se defendant. After voir dire, McClendon was allowed to officially withdraw as counsel but remained available to answer legal questions the appellant might have throughout the remainder of the trial.

represent the appellant on three conditions: that the appellant wanted him to represent him; that his fee was paid into his trust account; and that a continuance of at least sixty days be granted. Judge Craytor refused to grant a continuance or empanel another jury. Before leaving, Songer made the following record:

BY MR. SONGER: Your Honor, may I make inquiry on one or two points in order to diligently discuss this matter with the family of Mr. Stevenson?

BY THE COURT: Yes, sir, you may.

BY MR. SONGER: The inquiry is whether the defendant or his then counsel at any time up until it was originally set for trial here have ever asked for or been granted a continuance in the case, except the week's continuance that the Court gave after the trial started?

BY THE COURT: He had that continuance and originally the matter was set on the Idabel jury term and a change of venue was granted prior to that term.

BY MR. SONGER: But there wasn't an official or actual request for continuance, only a change of venue; is that right?

BY THE COURT: Yes, sir.

BY MR. SONGER: Another inquiry. When Mr. Stevenson stated to the Court that he did not wish Mr. McClendon to continue as counsel, did Mr. McClendon request withdrawal as counsel?

BY THE COURT: Yes, he did.

BY MR. SONGER: And was he granted withdrawal by this Court?

BY THE COURT: Not at that time. It was taken under advisement and it was granted yesterday, May the 24th.

BY MR. SONGER: Was that prior to the commencement of any jury selection or of the present jury that is now sworn? Was it prior to the commencement of the selection of the jury that is now sworn to try the cause?

BY THE COURT: I don't believe it was, but Mr. McClendon was given the opportunity by the Court that he did not have to involve himself in the jury selection and for the record, Mr. Songer, he did not involve himself in the jury selection of this jury.

BY MR. SONGER: Was Mr. McClendon counsel of record during the empaneling of this jury or had the Court granted permission to allow Mr. McClendon to withdraw if the Court remembers?

BY THE COURT: I don't remember the exact moment, but the motion to withdraw was allowed and Mr. McClendon was kept available in the courtroom and it was stated to both he and the defendant that he must appear here and be available to answer any legal question by the defendant, even though he was not functioning as his counsel in the case.

BY MR. SONGER: I have one other question and that is, has the defendant ever asked to represent himself in this case?

BY THE COURT: Specifically, no. But he has refused counsel as appointed and has stated that he would retain counsel and be ready on May the 24th.

BY MR. SONGER: Thank you, Your Honor. May I be excused?

BY THE COURT: Yes, you may. Thank you very much, Mr. Songer.

■ A person charged with a felony in a state court has an unconditional and absolute right to a lawyer. *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). He also has a right to represent himself if he voluntarily, knowingly, and intelligently elects to do so. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

In the present case, the record clearly shows the appellant never asked to represent himself. To the contrary, he repeatedly told the court that he wanted and needed an attorney. The question presented, then, is whether the appellant waived his constitutional right to be represented by counsel.

■ The right to counsel may be waived if done knowingly and voluntarily. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The record must show that the accused was offered counsel but intelligently and under-

standingly rejected the offer. *Lineberry v. State*, 668 P.2d 1144 (Okl.Cr.1983). The accused should be made aware of the dangers and disadvantages of self-representation, *see Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), so the record will establish that "he knows what he is doing and his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).

 In the case at bar, the trial court advised appellant to continue with McClendon if he could not get another attorney; otherwise he would have to proceed to trial the following Monday without counsel. The trial court did not, however, clearly advise appellant of the great disadvantage and hazards of self-representation. Thus, the record is insufficient to show that a voluntary and intelligent waiver was made.

The State argues the appellant, through his dilatory behavior, waived his right to counsel and elected to proceed pro se.[3] As Judge Cornish pointed out in his special concurrence to *Lineberry v. State*, 668 P.2d 1144, 1146 (Okl.Cr.1983),

> [W]here a defendant able to retain counsel has been advised by the court that he must retain counsel by a certain *reasonable time*, and where there is no showing why he has not retained counsel within that time, the court may treat his failure to provide for his own defense as a waiver of his right to counsel and require such defendant to proceed to trial without an attorney.

*Id.* at 1146–47, *quoting United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir.1977), cert. denied, 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978) (emphasis mine).

 In this case, the record does not indicate that the appellant was asking for new counsel for dilatory purposes. Only one one-week continuance was granted at appellant's request. Especially in a case in which the death penalty is being sought, one week is insufficient time to retain new

counsel expected to be ready for trial. Inasmuch as the trial court did not grant a reasonable amount of time, the appellant's failure to have retained counsel ready for trial did not constitute a waiver of his right to counsel.

By forcing the appellant to trial pro se under the circumstances, the trial court committed reversible error. The case is REVERSED and REMANDED for a new trial.

PARKS, P.J., concurs.

BUSSEY, J., dissents.

---

3. Most of the cases cited by the State involved defendants who chose to proceed pro se and who were appointed standby counsel. These cases are inapposite.