UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard H. RAMSDELL, Defendant-
Appellant.

No. 71–1418.

United States Court of Appeals,
Tenth Circuit.

April 21, 1972.

Rehearing Denied May 12, 1972.

Gordon L. Allott, Jr., First Asst. U. S. Atty. (James L. Treece, U. S. Atty.), for plaintiff-appellee.

Joseph H. Paulin, Denver, Colo., for defendant-appellant.

Before SETH and BARRETT, Circuit Judges, and MECHEM *, District Judge.

MECHEM, District Judge.

Defendant-appellant was convicted in the United States District Court for the District of Colorado on two counts. The first count, a violation of 18 U.S.C. 1621, perjury, arose from statements made by him under oath regarding his financial status when he sought court-appointed counsel. The second count, a violation of 18 U.S.C. 1001, involved the making of a false and fraudulent statement on an affidavit of financial status made for the purpose of obtaining funds to pay an expert's fee pursuant to the provisions of 18 U.S.C. 3006A et seq. of the Criminal Justice Act.

These charges came about as a result of another case, United States v. Richard H. Ramsdell, 10th Cir. 71–1014, in which defendant was prosecuted for an attempt to evade and defeat income taxes. During that case, defendant's financial difficulties prompted him to seek court-appointed counsel. He was questioned under oath by the Clerk of the District Court in connection with the preparation of an order appointing counsel. In response to a question about his wages or income from self-employment, he stated that he had none. The Clerk wrote down his answers and he signed this order appointing counsel on April 9, 1970. He also stated that he had no monthly or weekly income and no income from property on the affidavit of financial status which he signed on May 5, 1970.

Defendant was convicted on the income tax charge and subsequently appealed. In order to obtain court-appointed counsel for that appeal, he executed another affidavit on June 12, 1971 in which he stated that he had a monthly income of $750.00 from a parking garage lease, that he had signed a note for the full $750.00 and that he had lost the company when the lease was broken.

The inconsistencies in these affidavits resulted in defendant's indictment and conviction of the perjury and false statement charges from which he here appeals.

The original lease on the parking garage which ran from October 15, 1967 to December 1, 1969 was extended until December 1, 1971. However, it was cancelled by mutual consent on October 1, 1970. Under the terms of the lease, defendant lessee's rental fee was $1,700.00 per month. He had sublet the parking garage for a term commencing July 1, 1969 and was receiving from the sublessees from that date until September 1, 1970 a monthly sum of $1,700.00 (or $1,701.00) plus an additional $750.00 per month.

At defendant's arraignment on March 5, 1971, Judge Chilson advised him of his constitutional right to be represented by counsel. Defendant asked if he could act as his own attorney whereupon Judge Chilson stated that he had a right to represent himself but that in the court's experience, persons who attempted to represent themselves often did not

---

* Of the District of New Mexico, sitting by designation.

do a very good job of it. Judge Chilson then advised him that if he did not have money to employ counsel, the court would appoint counsel for him and then asked him it he wished to proceed without a lawyer. Defendant stated that he wanted to act as his own attorney. He read and signed a waiver of counsel.

Defendant represented himself at the trial before Judge Chilson and was found guilty by a jury on both counts. He asserts on this appeal that his waiver of counsel at his arraignment was a nullity because it was not intelligent, voluntary and competent inasmuch as it was motivated by fear that additional perjury and fraudulent statement charges would ensue if a court-appointed attorney represented him. He also contends that the trial judge failed to make a sufficient record upon which this court could conclude that he had validly waived his right to counsel.

■■ We find both of these arguments untenable. An accused may waive his constitutional right to assistance of counsel if he knows what he is doing and his choice is made with eyes open. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942). There is nothing in the record here to indicate that the defendant's waiver of his right to counsel was not made voluntarily. Defendant was twice asked if he wanted counsel, he was informed that one would be appointed for him if he had no money and he was advised by the court that defendants representing themselves "often did not do a very good job of it". When a trial court repeatedly advises a defendant of his right to an attorney, court-appointed if necessary, and the defendant repeatedly and specifically declines to exercise this right, the constitutional safeguards have been satisfied. Lowe v. United States, 418 F.2d 100 (7th Cir. 1969), cert. denied, 397 U.S. 1048, 90 S. Ct. 1378, 25 L.Ed.2d 660 (1970).

■ The question of whether the accused has intelligently and understandingly waived his right to counsel must depend in each case upon the particular facts and circumstances, including the background, experience and conduct of the accused. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). We find nothing to support the suggestion made here that this defendant, a mature man with a background of business experience, was so overwhelmed by doubts, threats, coercion and duress that he felt compelled to relinquish his right to counsel.

Defendant next asserts that he was denied his constitutional right to a fair trial because the trial judge failed to provide him with adequate judicial guidance. Specifically, he claims that the trial judge failed to inform him that the government could introduce evidence of his prior felony conviction only if he testified in his own behalf. The trial transcript on this point reveals that the court advised him of his constitutional right not to testify and advised him that if he did not testify, the court would instruct the jury that it should draw no inference as a result of his failure to do so. The United States Attorney thereupon requested that the court advise defendant that if he did take the stand, it was permissible for the United States to cross-examine him and to bring out any convictions which he may have. The court replied:

> "I don't understand that we have to, Mr. Allott. Once he takes the stand, the bars are down. He is subject to the same examination as any other witness."

This exchange took place out of the presence of the jury.

■ We cannot concur in defendant's characterization of the trial court's statement as a deliberate and intentional refusal to inform defendant of the potential consequences of his election to testify. The statement of the trial court was a clear directive to defendant that if he testified, he would be required to answer any questions put to him by the government. Defendant apparently weighed that risk against his desire to

explain his financial predicament to the jury when he made his decision to take the stand.

■ Defendant also urges that his pro se appearance required the trial court to instruct the jury that no adverse inference could be drawn from the fact that he was acting as his own counsel. Rule 30 Fed.R.Crim.P. provides that no party may assign as error any portion of the charge or omission therefrom unless he objects to it before the jury retires. Defendant tendered no instruction on this point and could not be expected to be familiar with the requirement of that rule. However, notwithstanding the mandate of Rule 30, we believe that whatever inference, if any, the jury may have drawn from the fact that defendant represented himself is a matter of pure speculation. The failure of the trial court to initiate an instruction on this point did not deprive defendant of any substantial right.

■■ Defendant next contends that the government failed in the sufficiency of its evidence on both counts in proving intent. We cannot agree. The defendant testified on cross-examination that he did sign the order appointing counsel and the affidavit of financial status under oath on which he stated that he had no income and on which he made no reference whatsoever to the parking garage lease then in existence or the $750.00 monthly income from it. It appears that the jury simply did not believe his explanation that he did not consider the $750.00 which he received monthly to be "income" since he had allocated it to pay a pre-existing obligation. The trial court instructed the jury, and properly so, that intent can be proved by circumstantial evidence. In reviewing the sufficiency of the evidence, we conclude that the jury was justified in finding beyond a reasonable doubt that the defendant was guilty of the offenses charged. United States v. Gibson, 446 F.2d 719 (10th Cir. 1971).

■ The final argument propounded by defendant is that his pro se defense was so inadequate that his trial amounted to a denial of his constitutional rights afforded by the Fifth and Sixth Amendments. Defendant speculates that if additional evidence had been introduced explaining his economic situation and his frame of mind at the time he applied for court-appointed counsel the jury might have returned a different verdict. We believe this information was adequately imparted to the jury by defendant's own testimony. Nor do we find that his failure to move for a judgment of acquittal, to offer questions on voir dire or special instructions and to make a summation to the jury were tantamount to a denial of a fair trial. A careful examination of the record fails to reveal that defendant was denied any of his constitutional rights.

Judgment affirmed.