Filed 9/11/17; Modified and Certified for Pub. 10/5/17 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

THE PEOPLE,

    Plaintiff and Respondent,

v.

DAKOTA BLANCETT,

    Defendant and Appellant.

2d Crim. No. B277433
(Super. Ct. No. 16PT-00501)
(San Luis Obispo County)

       Dakota Blancett appeals an order determining him to be a mentally disordered offender (MDO) and committing him to the Department of Mental Health for involuntary treatment. (Pen. Code, § 2962 et seq.)[1]  We reverse and hold that Blancett's waiver of the right to a jury trial was not knowing, voluntary, and intelligent pursuant to the totality of circumstances.  (§ 2962, subd. (b); *People v. Daniels* (Aug. 31, 2017, S095868) – Cal.5th -, - [lead opn. of Cuéllar, J.] (*Daniels*); *People v. Sivongxxay* (2017) 3

---

[1] All statutory references are to the Penal Code.

Cal.5th 151, 166 (*Sivongxxay*); *People v. Blackburn* (2015) 61 Cal.4th 1113, 1116, 1136 (*Blackburn*).)

Prior to conducting a bench trial, the trial court must obtain personally from an MDO defendant a knowing, intelligent, and voluntary waiver of the right to a jury trial unless the court finds substantial evidence that the defendant lacks the capacity to make such a waiver. (*Blackburn*, *supra*, 61 Cal.4th 1113, 1116, 1136.) Here the record is bereft of evidence demonstrating that Blancett was sufficiently advised of his right to a jury trial and that he knowingly and voluntarily waived that right.

*FACTUAL AND PROCEDURAL HISTORY*

On April 29, 2014, Blancett pleaded guilty to two counts of child molestation. (§ 288, subd. (a).) The criminal offenses occurred in September 2013, when Blancett touched the genitals of a three-year-old boy and a two-year-old girl. The trial court sentenced Blancett to a three-year prison term for the two counts.

On July 13, 2016, the Board of Parole Hearings (Board) determined that Blancett was an MDO pursuant to the criteria of section 2962. As a condition of parole, the Board required him to accept treatment from the Department of Mental Health. On July 19, 2016, Blancett filed a petition with the trial court pursuant to section 2966, subdivision (b) to contest this decision.

Prior to the hearing regarding the petition, the trial court appointed counsel for Blancett. Counsel accepted the appointment and then immediately requested a court trial:

"[Counsel]: Yes. We'd like to set it for court trial.

"The Court: All right. So, Mr. B., [counsel] says that you are okay with having a judge decide your case and not a jury?

"[Blancett]:  Yes, your honor.

"The Court:  That's okay with you?

"[Blancett]:  Yes, your honor.

"The Court:  All right."

This was the only colloquy between the court and Blancett regarding advisement of his right to a jury trial and the court's acceptance of a knowing and intelligent waiver.

*Expert Witness Testimony*

At the hearing, Doctor Angie Shenouda, a forensic examiner for Atascadero State Hospital, testified that she interviewed Blancett and reviewed his hospital records and written MDO evaluations.  She concluded that he met the MDO criteria of section 2962.  Specifically, Shenouda opined in part that Blancett suffers from the severe mental disorder of pedophilia and that he presents a substantial physical danger to others.  To support her opinion, she pointed out that Blancett lacks insight into his disorder, had not completed sex offender or substance abuse treatment, and had no relapse-prevention plan.

*Written MDO Evaluations*

Doctors J. Kelly Moreno, Christopher G. Matosich, Stacy McLain, and Craig West, respectively, interviewed Blancett and reviewed his hospital and medical records in the course of their evaluations.  Moreno and Matosich opined that Blancett met the MDO criteria of section 2962; McLain and West opined that he did not.

*Findings, Order and Appeal*

Following Shenouda's testimony and the trial court's review of the written MDO evaluations, the court determined that Blancett met the requirements of section 2962 beyond a

reasonable doubt. The court then committed him to the Department of Mental Health for involuntary treatment.

Blancett appeals and contends that his waiver of the right to a jury trial was not knowing and intelligent pursuant to the totality of the circumstances. (*Sivongxxay*, *supra*, 3 Cal.5th 151, 166 [a defendant's waiver of the right to jury trial may not be accepted by the trial court unless it is both knowing and intelligent, i.e., made with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it].)

*DISCUSSION*

Blancett contends that the trial court erred by not completely advising him of the right to, and the attributes of, a jury trial prior to accepting his jury trial waiver. (§ 2966, subd. (b) ["The court shall advise the petitioner of . . . the right to a jury trial"]; *Blackburn*, *supra*, 61 Cal.4th 1113, 1130 [the decision to waive a jury trial belongs to the defendant "in the first instance"].) He asserts that the error is reversible per se. (*Blackburn*, at pp. 1132-1133 [trial court did not advise defendant of his right to a jury trial or obtain a personal waiver thereof].)

In *Blackburn*, *supra*, 61 Cal.4th 1113, 1124-1125, 1136, our Supreme Court held that a defendant in MDO *recommitment* proceedings must be personally advised of the right to a jury trial, and that any waiver thereof must be personal, knowing, and voluntary. (§ 2972, subd. (a).) The court reasoned in part that MDO commitment proceedings are not ordinary civil actions, but are special proceedings of a civil nature that threaten the possibility of a significant deprivation of liberty. (*Blackburn*, at p. 1124; *id.* at p. 1134 [MDO commitment scheme is "'a civil hearing with criminal procedural protections'"].) Accordingly, "a

4

jury trial is the default procedure absent a personal waiver." (*Id.* at p. 1131.) The court did allow for defendant's counsel, however, to "control[] the waiver decision" in the event of substantial evidence of defendant's incompetence. (*Ibid.*)

Here Blancett challenged the Board's determination that he met the statutory criteria for an initial MDO commitment. Section 2966, subdivision (b), applicable to initial commitment proceedings, provides: "The court shall advise the petitioner of his or her right to be represented by an attorney and of the right to a jury trial." The language of sections 2972, subdivision (a) (recommitment proceedings) and 2966, subdivision (b) is nearly identical and the statutes should receive the same interpretation because they embrace the same subject matter. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166 [construing parallel language in section 1026.5].) Therefore, we hold that section 2966, like section 2972, requires the trial court to advise the petitioner in MDO commitment proceedings of the right to a jury trial and, before holding a bench trial, to elicit a personal waiver of that right unless the court finds substantial evidence that the petitioner lacks the capacity to make a knowing and voluntary waiver. (*Blackburn*, *supra*, 61 Cal.4th 1113, 1116, 1136.)

In *Sivongxxay*, *supra*, 3 Cal.5th 151, our Supreme Court considered the issue of a knowing and intelligent waiver of the right to a jury trial in the context of the guilt and penalty phases of a death-penalty prosecution. The court affirmed that a knowing, intelligent, and express personal waiver of the jury trial right is required. (*Id.* at p. 166.) Resolution of the validity of a waiver depends upon "'the unique circumstances of each case.'" (*Ibid.*, citing *Adams v. U.S. ex rel. McCann* (1942) 317 U.S. 269, 278.) "Our precedent has not mandated any specific method for

determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Id.* at p. 167.)

*Sivongxxay* concluded, based upon its specific circumstances, that the defendant's waiver was knowing and intelligent. (*Sivongxxay*, *supra*, 3 Cal.5th 151, 167.) Nevertheless, the court emphasized "the value of a robust oral colloquy" in eliciting a knowing, intelligent, and voluntary waiver of a jury trial. (*Id.* at p. 169.) The court then offered general guidance and a recommendation that "[g]oing forward" the trial courts advise defendants of "the basic mechanics of a jury trial in a waiver colloquy," including jury selection and jury unanimity. (*Ibid.*) Specifically, the court recommended that advisements include statements that a jury consists of 12 members of the community; defendant, through counsel, may participate in jury selection; all jury members must unanimously agree upon a verdict; and, if a defendant waives the right to a jury trial, the judge alone will decide guilt or innocence. (*Ibid.*) The court also recommended that the trial court take additional steps to ensure that the defendant comprehends what the jury trial right entails, e.g., ask defendant whether he has consulted with his attorney, whether counsel has explained the differences between a jury and a bench trial, and whether defendant understands the right he is waiving. (*Id.* at pp. 169-170.) "Ultimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and intelligently." (*Id.* at p. 170.)

Our review of the record indicates that Blancett did not waive his right to a jury trial with full awareness of the nature

of the right being abandoned and the consequences of the decision to abandon it. (*Sivongxxay*, *supra*, 3 Cal.5th 151, 166.) The trial court did not inform Blancett that he had a right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial. (*Id.* at p. 169.) Neither did the court inquire whether Blancett had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether Blancett had any questions about the waiver. (*Id.* at pp. 169-170.) In a barebones colloquy, the court asked only if Blancett was "okay" with a court trial instead of a jury trial. (*Daniels*, *supra*, - Cal.5th -, - [lead opn. of Cuéllar, J.] [p. 55] ["[T]he trial court is not merely a passive receiver of an attempted waiver"].) Indeed, the court appointed counsel moments before Blancett entered his waiver and there is no record of discussion between Blancett and his attorney prior to the waiver.

Moreover, this was Blancett's initial MDO commitment and the record does not suggest that Blancett was familiar with MDO proceedings or that he was aware that he was entitled to a jury trial. Although he pleaded guilty to two counts of child molestation two years prior to the MDO hearing, we have no record of the advisements he received before entering that plea. On this record, we do not presume that Blancett was legally sophisticated.

*Blackburn*, *supra*, 61 Cal.4th 1113, 1136-1137, considered the consequences of a trial court's failure to expressly advise an MDO of his right to a jury trial. "[A] trial court's failure to properly advise an MDO defendant of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an

7

express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*Id.* at p. 1136.) In view of the trial court's stark colloquy, the lack of evidence that Blancett discussed his jury trial right and waiver with counsel, Blancett's inexperience with the criminal justice system, and Blancett's lack of familiarity with MDO proceedings, we conclude that his waiver was not knowing and intelligent. (*Daniels*, *supra*, - Cal.5th -, - [lead opn. of Cuéllar, J.] [p. 50] ["[A] reviewing court satisfies itself of a legitimate waiver only when the record affirmatively demonstrates it was knowing and intelligent"]; *Sivongxxay*, *supra*, 3 Cal.5th 151, 166.) *Blackburn* preceded Blancett's MDO hearing by one year and the trial court here could not have reasonably relied upon pre-*Blackburn* law. For this reason, the error constitutes a miscarriage of justice and requires reversal, not a remand for further proceedings. (*Blackburn*, at p. 1117.)

We recognize that Blancett's initial commitment likely has expired, but our holding here will pertain to any recommitment proceedings.

We need not discuss Blancett's remaining contentions in view of this disposition.

The order is reversed.


GILBERT, P. J.

We concur:


PERREN, J.          TANGEMAN, J.

8

Gayle L. Peron, Judge

Superior Court County of San Luis Obispo

_____

      Christopher L. Haberman, under appointment by the Court of Appeal, for Defendant and Appellant.

      Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven E. Mercer, Acting Supervising Deputy Attorney General, and Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.

Filed 10/5/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAKOTA BLANCETT,<br><br>    Defendant and Appellant. | 2d Crim. No. B277433<br>(Super. Ct. No. 16PT-00501)<br>(San Luis Obispo County)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on September 11, 2017, be modified as follows:

1.  On page 1, the following paragraph is inserted at the beginning of the opinion:

> *People v. Blackburn* (2015) 61 Cal.4th 1113 holds that a trial court must advise a defendant in an MDO (mentally disordered offender) recommitment hearing of his or her right to a jury trial.  We stress that *Blackburn* means what it says and applies to all MDO hearings, including original commitment hearings.

2.  On page 1, second line of first paragraph, delete "a mentally disordered offender (MDO)" and insert in its place "an MDO."

3.  On page 2, first line, the citation beginning "*People v. Blackburn* (2015) …" is changed to "*People v. Blackburn, supra,* …"

4.  On page 8, the first full paragraph is changed to read:

   We recognize that Blancett's initial commitment likely has expired, but our holding here will pertain to any future commitment proceedings.

There is no change in judgment.

The opinion in the above-entitled matter filed on September 11, 2017, was not certified for publication in the Official Reports.  For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

2