**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-1436
_____

DONALD E. BOYD,
                                        Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
ATTORNEY GENERAL NEW JERSEY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:18-cv-00965)
District Judge: Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 19, 2020

Before: McKEE, BIBAS, and COWEN, *Circuit Judges*

(Filed:  August 20, 2020)
_____

OPINION[*]
_____

BIBAS, *Circuit Judge*.

On habeas review of a state conviction, a federal court's role is limited. When a state

court reasonably finds facts and applies clearly established federal law, we must defer.

---

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

Donald Boyd decided to represent himself at his criminal trial for kidnapping and rape. It did not go well, and the jury convicted him. He now attacks that conviction on habeas, arguing that the State denied him due process and his right to counsel when it involuntarily drugged him with Xanax starting on the third day of trial.

But as the state court reasonably found, Boyd knew all along that he was taking Xanax for his anxiety and did not object to it. Indeed, he demanded that drug by name, heard the nurse announce that she was giving it to him, and said he felt better after he took it. So although Supreme Court precedent requires courts to make certain findings before letting the government *involuntarily* medicate a defendant, Boyd had no right to that process. And no clearly established federal law required the state court to reevaluate Boyd's waiver of his right to counsel after he started taking Xanax. So we will affirm the District Court's denial of his habeas petition.

## I. BACKGROUND

### A. The crime

Pretending to be an expected visitor, Donald Boyd tricked a woman into letting him into her apartment. *State v. Boyd*, No. 04-06-1142, 2008 WL 3287240, at *2 (N.J. Super. Ct. App. Div. Aug. 12, 2008) (per curiam). Once inside, Boyd attacked her from behind. *Id.* He then bound her arms and legs to the bed, threatening her with a knife and gun. *Id.* As she resisted, he gagged her and raped her both vaginally and anally. *Id.*

A year and a half later, DNA tests identified the semen found on the victim as coming from Boyd. *See id.* As a forensic scientist testified, the odds that the DNA could have come from anyone else were several quadrillion to one. *Id.*

**B. Boyd's trial**

The State of New Jersey charged Boyd with aggravated sexual assault, kidnapping, burglary, and terroristic threats. Before trial, Boyd moved to fire his lawyer. Though the court warned him of the dangers of self-representation, Boyd still chose to represent himself. At the hearing, Boyd noted that he takes pain medication but not psychotropic drugs. Finding that his waiver of counsel was knowing and voluntary, the trial court granted his motion but ordered his lawyer to stay on as standby counsel.

The trial did not go smoothly. For the first three days, Boyd kept protesting that the jail had not given him his medications. The first morning, he told the judge that he had not eaten breakfast or slept in thirty hours because he had gotten into a quarrel in jail. He also said that he needed Clonidine (for high blood pressure), Ultram and Pheldene (for pain), and Zantac (for stomach ulcers), but the jail had not given him these medications. Later that morning, Boyd took all but the Zantac, which would have to wait until he met with the jail doctor.

That afternoon, the court noted on the record that in another trial, Boyd had made the same allegations. There too, Boyd said he had gotten into a quarrel at the jail, had not had his blood-pressure medicine, and had neither eaten nor slept in thirty hours. *State v. Boyd*, No. 01-12-3098, 2006 WL 1096622, at *1 (N.J. Super. Ct. App. Div. Apr. 27, 2006) (per curiam).

The second day, Boyd again complained that he had gotten only his blood-pressure medication. He told the judge that he takes painkillers and anxiety medication and that he was "shaking" without them. JA 8, 271. The trial transcript shows that he specifically

3

named "Xanax." JA 271. But because the jail doctor had decided that he did not need them, the trial moved ahead.

On the third day of trial, Boyd said he could not keep representing himself until he got his other medications. Though he told the court that he was "shaking," the court did not believe him. JA 276. The court noted that Boyd was not shaking, slurring, or stuttering; instead, he looked "as solid and secure as everyone else in the courtroom." JA 279. Still, the court called the jail doctor to see about getting Boyd his other medications.

When the jail nurse arrived later that morning, she said on the record and in Boyd's presence that she had brought "Xanax, one milligram, and Ultram, fifty grams." JA 278. Boyd then drank the medicine dissolved in a glass of juice. An officer confirmed that he would keep getting those medications twice a day for the rest of the trial.

After a long weekend, the trial resumed with closing arguments. When Boyd stood up to give his argument, he faced the jury and said something like: "My name is Donald Boyd. Do you want to see a man bleed? I'll show you blood." JA 285. He then took out a hidden razor blade and cut his arm. Boyd later admitted that he had "planned [the incident], maybe to hurt himself, [or] maybe to get a mistrial." JA 22.

On the last morning of trial, Boyd showed up to court in his prison jumpsuit. The cut on his arm did not need stitches, nor was he wearing a bandage. When asked why he was not dressed for trial, he said he had just learned that the jail was giving him Xanax, not Zantac. He alleged that he had never taken Xanax in his life and that the high dosage made him "crazy." JA 282. When the court asked again why he was not dressed for trial, he said,

"[i]t doesn't matter any more." JA 282. Later, he added: "Of course I'm going to be found guilty in front of this jury. This was a lynching." JA 285.

The jury did indeed convict Boyd of all fifteen charges, and the court sentenced him to life imprisonment plus sixty years. The state appellate court affirmed. 2008 WL 3287240. The New Jersey and U.S. Supreme Courts denied review. 960 A.2d 745 (N.J. 2008); 556 U.S. 1241 (2009) (mem.).

### C. State habeas

In his state post-conviction petition, Boyd claimed that he did not know he had been given Xanax for part of the trial. The trial court denied his petition, finding that his claim conflicted with his statements at trial that he took anxiety medication. The New Jersey appellate court affirmed. It distinguished *Riggins v. Nevada*, which provides constitutional safeguards when the government seeks to medicate a defendant at trial involuntarily. 504 U.S. 127, 135 (1992). Here, by contrast, the nurse had announced the drug on the record, so Boyd "knew he was being given Xanax from the beginning of the trial" yet never objected. JA 32. The court also noted that *Riggins* involved an anti-psychotic rather than an anti-anxiety drug.  In any event, it found no prejudice because there were no signs that the Xanax left Boyd "intoxicated, or cognitively impaired." JA 34. The New Jersey Supreme Court denied review.

### D. Federal habeas

Boyd raised the same claim again on federal habeas. The District Court denied his petition. It deferred to the state court's finding that Boyd knew he was taking Xanax. And it

recognized that *Riggins* is limited to "*forced* and *involuntary*" medication. JA 88 (citing *Sell v. United States*, 539 U.S. 166, 178–81 (2003)).

The District Court also rejected Boyd's claim that he had a right to a second hearing on self-representation. Boyd argued that taking Xanax after he had decided to proceed pro se impaired his understanding of the risks of representing himself. But, the court noted, he offered no support for that assertion apart from "after the fact speculation." JA 91. We issued a certificate of appealability.

The District Court had jurisdiction under 28 U.S.C. §2254(a), and we have jurisdiction under §§1291 and 2253(a). We cannot grant federal habeas relief unless the state court's decision rested on an "unreasonable determination of the facts" based on the evidence before it or its decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court." §2254(d)(1)–(2). Because the District Court held no evidentiary hearing, we review its decision de novo. *Robinson v. Beard*, 762 F.3d 316, 323 (3d Cir. 2014).

## II. THE STATE COURT REASONABLY FOUND THAT BOYD RECEIVED DUE PROCESS

Boyd first claims that the State denied him due process by "unknowingly and involuntarily drugg[ing]" him with high doses of Xanax at trial. Appellant's Br. 16. The state habeas court, he argues, unreasonably applied *Riggins* and *Sell*. Not so.

Though *Riggins* and *Sell* require courts to make certain findings before the government can *involuntarily* medicate a defendant on trial, they do not extend those procedural safeguards to defendants who are *not forced* to accept medication. 504 U.S. at 133; 539 U.S.

6

at 179. Here, the state court reasonably found that Boyd knew the jail was giving him Xanax and did not refuse it. So its decision reasonably applied those precedents.

### A. The state court's finding that Boyd knew he was taking Xanax was reasonable

The state court found that Boyd knew the jail was giving him Xanax and did not object. On federal habeas, we presume the state court's factual finding was correct. 28 U.S.C. §2254(e)(1). As petitioner, Boyd bears the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id.* He has not met that heavy burden.

Boyd claims that he did not know he was taking Xanax. But that claim conflicts with the record. On the third day of trial, the jail nurse announced the name of the drug ("Xanax") and the dosage ("one milligram") on the record in Boyd's presence before giving it to him. JA 278.

Boyd responds that he never heard the nurse say "Xanax." Rather, he says he heard "Zantac," the ulcer medication that he had asked for. But this is unlikely. On the first day of trial, Boyd complained about not getting his anxiety medication. He told the court: "I take *anxiety medication* and my blood pressure medication together with painkillers. Not to have them I'm shaking right now." JA 8 (emphasis added). He also explained: "This morning, they gave me my blood pressure medication, no Ultum [*sic*]. *The Xanax is for my ulcers. Because I have anxiety.* I don't have any of that. I've been on it, taking it regularly now for over a year. You take a person off of it like that at their discretion, I'm just very shaky." JA 271 (emphasis added).

7

Plus, Boyd heard the nurse say "one milligram" of Xanax. JA 278. That makes it unlikely that he thought he was taking Zantac. On the first day of trial, he told the court that he takes *one hundred and fifty* milligrams of Zantac twice a day. He was articulate and persistent in demanding the particular medications he needed. Though Xanax and Zantac sound alike, Boyd did not object to hearing a dose that would have been 1/150 of his usual Zantac dose.

Based on the evidence before it, the state court could have reasonably found that he knew he was taking Xanax, an anxiety medication, not Zantac, an ulcer medication. And the record does not show, nor does Boyd claim, that he objected. Thus, Boyd cannot show by clear and convincing evidence that the state court's findings were wrong.

**B. Because Boyd knew he was taking Xanax and did not object, the state court did not unreasonably apply Supreme Court precedent**

Boyd argues that the state habeas court unreasonably applied *Riggins* and *Sell*. He claims that he was denied the procedural safeguards guaranteed by those cases. But Boyd had no right to those protections because both cases limit only involuntary medication.

The facts of *Riggins* and *Sell* are largely the same. In each case, the trial court rejected a defendant's objection to having to take antipsychotic drugs during trial. 504 U.S. at 129–31; 539 U.S. at 173–74. In each case, the Supreme Court recognized defendants' "constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" *Sell*, 539 U.S. at 178 (quoting *Washington v. Harper*, 494 U.S. 210, 221 (1990)); *accord Riggins*, 504 U.S. at 133–34. So before the Government can force a defendant to take those drugs, it must find that the treatment is (1) "medically appropriate,"

8

(2) "substantially unlikely to have side effects that may undermine the fairness of the trial," and (3) necessary (given the alternatives) to promote important governmental interests relating to the trial. *Sell*, 539 U.S. at 179; *accord Riggins*, 504 U.S. at 135. These cases mandated these safeguards for defendants who are "treated involuntarily" or "forced" to take the medication. *Riggins*, 504 U.S. at 135; *accord Sell*, 539 U.S. at 179.

Boyd tries to stretch involuntariness to include lack of informed consent. But *Riggins* and *Sell* do not say that. On federal habeas, we cannot extend the definition of involuntariness to reach lack of informed consent. The habeas statute neither "require[s] state courts to extend [Supreme Court] precedent [n]or license[s] federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

Boyd knew he was taking Xanax, and he did not object. No one forced him to take it. So this is not a case of involuntary medication, and the state court correctly set *Riggins* aside. That is enough to support the court's decision. We need not decide whether the state court erred by distinguishing *Riggins* based on the type of drug given, or by considering actual prejudice.

### III. THE STATE COURT REASONABLY FOUND NO SIXTH AMENDMENT VIOLATION

Boyd also argues that the State violated his Sixth Amendment right to counsel by drugging him with high doses of Xanax after he decided to proceed pro se. This claim fails too. No clearly established federal law guaranteed him a second *Faretta* hearing, after he started taking Xanax, to reevaluate his decision to represent himself.

Though the Sixth Amendment guarantees a defendant the right to represent himself, he must choose to do so "with eyes open." *Faretta v. California*, 422 U.S. 806, 835 (1975)

9

(quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942)). The court must first warn him of the "dangers and disadvantages of self-representation" so the record reflects a knowing and intelligent waiver. *Id.*

Boyd now argues that once he started taking Xanax, the state court should have held a second *Faretta* hearing. To be sure, Boyd did say at the hearing that he was not taking any psychotropic drugs. But while he was taking Xanax on the third and fourth days of trial, he never said that he felt sick or unable to represent himself. Only on the fifth day, after he claimed that he learned he was taking it, did he say it made him "crazy." JA 282.

This silence is telling. Given his repeated pleas for medication, the state court could have reasonably expected him to speak up if he felt unwell. But just the opposite happened: once the medicine "kick[ed] in," he told the court he was "definitely feeling a little better and a little bit level headed and a little bit more clear." JA 280. "That medication is essential for me," he added. *Id.* He also said he "d[id]n't have the shakes anymore." JA 280. And though Boyd cut his arm in front of the jury during his closing statement, he admitted that he had planned that in part "maybe to get a mistrial." JA 22.

Boyd does not cite, nor can we find, any clearly established federal law that requires a second *Faretta* hearing in these circumstances. So the state habeas court properly denied relief. We express no opinion on whether there could be some intervening circumstance that might require a court to reevaluate a defendant's waiver of his right to counsel.

\* \* \* \* \*

On federal habeas, we must defer to the state court's reasonable findings of fact and application of clearly established Supreme Court precedent. The state court reasonably

10

found that Boyd knew he was taking Xanax and did not object to it. So it reasonably distinguished this case from *Riggins* and *Sell*, which prescribe procedures before the Government can medicate a defendant involuntarily. And no clearly established federal law required the state court to hold a second *Faretta* hearing, after Boyd started taking Xanax, to reevaluate his waiver of his right to counsel. Because the District Court correctly rejected these claims, we will affirm.