# COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Russell and Malveaux
Argued at Norfolk, Virginia

PUBLISHED

JUSTIN LEON WALKER

v.      Record No. 1945-18-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
MARCH 24, 2020

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Wilford Taylor, Jr., Judge[1]

Charles E. Haden for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Justin Leon Walker, appellant, was convicted by a jury of forcible sodomy, attempted rape, attempted object sexual penetration, and aggravated sexual battery. On appeal, he claims that the trial court erred in forcing him to go to trial without an attorney in violation of the Sixth Amendment of the United States Constitution. He contends: 1) he never waived his right to an attorney; 2) he did not ask to represent himself; 3) he clearly asserted his desire for an attorney; and 4) he was constitutionally entitled to the assistance of counsel at trial. For the reasons that follow, we affirm appellant's convictions.

---

[1] Several different judges presided over the numerous motions to withdraw and participated in the appointment of new counsel for appellant.

BACKGROUND[2]

Appellant was indicted for the four felonies on November 4, 2013, and, on the same day, the trial court appointed two attorneys from the Office of the Public Defender (counsel #1) to represent him.[3]  On January 28, 2014, counsel for appellant filed a motion to withdraw, asserting that appellant's stated intent to file bar complaints against the two assistant public defenders who had been assigned to represent him created an "adversarial relationship" between client and counsel making further representation of him impossible.  The trial court granted the motion and appointed James Gochenour (counsel #2) to represent appellant.

Soon thereafter, Gochenour moved to withdraw.  The trial court initially denied the motion, however, at a hearing on May 16, 2014, appellant requested new counsel, stating to the trial court that, "I can't use no lawyer that's a liar and unprofessional . . . I'm entitled to a lawyer that's going to represent me not prosecute me."  Ultimately, the trial court relieved Gochenour and appointed J. Robert Harris, III (counsel #3) to represent appellant.

On June 5, 2014, Harris filed a motion to withdraw as counsel.  In the motion, Harris stated that appellant "desires to represent himself and requests to have J. Robert Harris, III serve as" standby counsel.  On June 11, 2014, the trial court, in a written order, stated that the appellant's conduct constituted a "constructive discharge of counsel or a *de facto* waiver of counsel" and appointed Harris as standby counsel for trial.

On February 13, 2015, the trial court relieved Harris as standby counsel.  At that time, appellant indicated that he wished to have a new attorney appointed to represent him.  The trial

---

[2] Because appellant does not present a challenge to the sufficiency of the evidence, there is no need to recite the facts of the offenses.

[3] Although two attorneys from the Office of the Public Defender were assigned to appellant, we treat the appointment of the office as the appointment of one counsel/attorney.

court appointed David Dildy (counsel #4) to represent appellant and continued the matter for a jury trial.

On April 14, 2015, Dildy filed a motion to withdraw, informing the trial court that a "conflict has developed between [appellant] and his counsel such that the counsel is ethically constrained to ask the [c]ourt for leave to withdraw." The trial court granted the motion, and, on April 24, 2015, appointed Stephen K. Smith (counsel #5) to represent appellant.

On August 27, 2015, Smith filed a motion to withdraw, informing the trial court of appellant's wish to proceed *pro se*. On September 4, 2015, the trial court allowed Smith to withdraw. In the same order, the trial court appointed David Tichanski (counsel #6) to represent appellant.

On November 30, 2015, Tichanski, citing "ethical conflicts" that he was not able to disclose, filed a motion to withdraw as counsel. The trial court took the matter under advisement until a psychological evaluation of appellant could be completed. The trial court held a hearing on March 16, 2016, and Tichanski renewed his motion to withdraw. Tichanski informed the trial court that appellant would not speak to him, that appellant already had filed a bar complaint against him, and that appellant "is asking me to do certain things that I'm ethically prohibited from doing . . . ." In denying Tichanski's request, the trial court posed the question, "Won't that be the case with anybody that we appoint, then . . . ?" Counsel responded that, although he did not know what the answer to that question was, he knew that he could no longer effectively represent appellant. Tichanski added that appellant vacillated between wanting counsel and wanting to proceed *pro se*, with appellant's thoughts on the topic changing "from day-to-day."

Appellant informed the trial court that he had brought the bar complaint to court with him and demanded yet another lawyer, declaring "I'm not dealing with" Tichanski. After some contentious discussion with appellant about whether to set the case with or without a jury, the

trial court indicated it would set the case for a jury trial. Appellant responded, "You need to get this man off my case that's what you need to do. . . . You need to get that cracker off my case, how about that? Yeah, I know you don't like that, do you? . . . Red neck ass nigger. Fuck that, man." The trial court eventually scheduled the matter for a jury trial to commence on October 18, 2016.

The trial court brought the parties back for a hearing on April 1, 2016. Noting appellant's combative behavior since the beginning of the proceedings, along with the multiple attorneys the trial court had appointed who "didn't work" for appellant, the trial court finally allowed Tichanski to withdraw, stating to appellant that his behavior and language had created a situation where Tichanski could not effectively represent appellant. The trial court stated to appellant, "I'm not appointing another lawyer. You have every right to hire someone to represent you, but based on my review of your history -- your procedural history in this case, you have effectively waived your right to be appointed a lawyer to represent you. You're going to have to represent yourself[.]"

On September 27, 2016, the trial court convened a hearing. At that hearing, the trial court informed appellant that, despite its prior ruling, it had reconsidered and would grant appellant's previous request for appointment of yet another counsel. The trial court informed appellant that it was appointing Tyrone Johnson (counsel #7) as his counsel. In introducing appellant to Johnson, the trial court both encouraged appellant to cooperate with Johnson and warned of the consequences of a lack of cooperation, stating from the bench

> But I need to just remind you that it's real important that you cooperate with your counsel. Mr. Johnson has been appointed to help you with this case. So you need to cooperate with him and refusal to cooperate with your counsel can result in you waiving your right to court-appointed counsel.

- 4 -

The trial date ultimately was rescheduled for March 6, 2017. In setting the date, the trial court noted that the case had been continued nearly thirty times and informed the parties that the case *would* be tried on March 6, 2017.

On February 13, 2017, Johnson, citing a conflict of interest, moved the trial court for leave to withdraw. At the February 15, 2017 hearing on Johnson's motion, the Commonwealth raised concerns, stating

> that the defendant has acted in a dilatory manner because I think he uses the bar complaint to force an attorney to have to get out of the case or he acts in a manner that would force the defense attorney to be unable to properly prepare for the case.

In granting Johnson's motion, the trial court agreed with the Commonwealth that appellant's conduct amounted to a deliberate delay strategy and concluded that appellant had waived his right to counsel. The trial court explained from the bench that

> [m]y conclusion is that [appellant] has, in fact, waived his counsel or right to a counsel by his behavior. And I concur totally with what [the prosecutor] said. The use of the bar complaints, refusal to come out and talk to his lawyer, to ask his lawyer to make frivolous motions, all of that. . . . By the way, I had this discussion with him the last court hearing. So . . . you're now representing yourself in this case.

The trial court appointed Gregory Bane (counsel #8) as standby counsel for appellant's jury trial occurring on March 6 and 7, 2017. Before trial, appellant made it clear to the trial court that he did not desire standby counsel, and Bane informed the trial court that appellant would not communicate with him. Appellant represented himself at trial and was convicted of all offenses.

This appeal followed.[4]

---

[4] We note that, after appellant's convictions, the trial court appointed yet another lawyer, Charles Haden (counsel #9), to represent appellant on appeal.

ANALYSIS

On appeal, appellant argues he was denied his constitutional right to the assistance of counsel. His constitutional challenge raises a question of law that we review *de novo*. Huguely v. Commonwealth, 63 Va. App. 92, 106-07 (2014).

I. The Sixth Amendment right to counsel and waiver

In pertinent part, the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defen[s]e." This Sixth Amendment guarantee "is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." Kimmelman v. Morrison, 477 U.S. 365, 374 (1986). It mandates that a defendant have a fair opportunity to secure counsel of his own choice to represent him, Powell v. Alabama, 287 U.S. 45, 53 (1932), or, if a defendant is indigent, that representation be made available to him by the court, see Gideon v. Wainwright, 372 U.S. 335 (1963).

The Sixth Amendment right to counsel also "implicitly embodies a 'correlative right to dispense with a lawyer's help[,]'" Faretta v. California, 422 U.S. 806, 814 (1975) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279 (1942)), and thus, it can be waived. Due to the fundamental nature of the right, the burden of proving waiver falls upon the Commonwealth. Lemke v. Commonwealth, 218 Va. 870, 873 (1978).

To be valid, any such waiver must be the voluntary act of the defendant and must constitute a knowing and intelligent abandonment of a known constitutional right or privilege. Edwards v. Arizona, 451 U.S. 477, 482 (1981). The waiver of the right to counsel need not be express; it may be inferred from a defendant's conduct. McNair v. Commonwealth, 37 Va. App. 687, 696 (2002) (*en banc*).

As we previously have stated regarding waivers by conduct,

> the Sixth Amendment right to counsel, while fundamental, is not a right without limitation. Specifically, it is not a right subject to endless abuse by a defendant. Instead, the right is qualified in its exercise and merely affords a defendant an absolute right to a fair opportunity to representation by counsel. This limitation derives from the important and valid state interest in proceeding with prosecutions in an orderly and expeditious manner, taking into account the practical difficulties of assembling the witnesses, lawyers, and jurors at the same place at the same time as well as the concerns and interests of the victims, witnesses and general public, and the appropriate use of judicial resources.

Bailey v. Commonwealth, 38 Va. App. 794, 803 (2002) (internal quotation marks omitted) (quoting McNair, 37 Va. App. at 695). "To establish a *de facto* waiver or a constructive discharge, Virginia law requires that we view the defendant's conduct in its entirety, together with all the other circumstances of the case, that support the conclusion his or her conduct tended to unreasonably and unjustifiably delay trial." Id.

## II. Appellant's conduct as waiver

The record makes clear that the trial court provided appellant with more than "a 'fair opportunity' to representation by counsel." Id. Although such a conclusion is amply supported by the mere fact that the trial court appointed not one, but eight, counsel to either represent appellant fully or serve as his standby counsel, focusing solely on the magnitude of that number misses part of the story.

Despite appellant's behavior making clear that its efforts were futile, the trial court repeatedly attempted to provide him with the benefit of counsel. It did so despite appellant vacillating between representing himself or wanting counsel. It did so despite having continued the matter nearly thirty times for delays largely attributable to appellant and his inability to work with counsel. It did so despite appellant developing a conflict with every lawyer who was appointed to represent him. It did so despite (and after) appellant engaged in a profanity-laced

- 7 -

tirade in open court in response to the trial court's initial decision not to remove a lawyer, a decision that the trial court magnanimously revisited and reversed. It did so by continuing to appoint counsel for appellant after finding that he had waived that right in June 2014 and again in April 2016. Even after finding for the third and final time that appellant had waived his right to counsel, the trial court sought to provide him the benefit of the assistance of standby counsel, whose assistance appellant effectively rejected by refusing to communicate with him. Finally, underscoring its commitment to providing appellant the opportunity to enjoy the benefits of counsel, the trial court, as noted above, appointed counsel on eight occasions during the proceedings below to either represent appellant fully or serve as his standby counsel despite what can only be characterized as appellant's repeated, intentional attempts to sabotage both counsel's ability to represent him and the judicial process. In short, the trial court's actions demonstrated that it did more than a bare minimum to provide appellant with the benefit of his Sixth Amendment right to assistance of counsel; it went the proverbial extra mile and then some.

The record also reflects that appellant tried his case *pro se* not because the trial court failed to safeguard his Sixth Amendment right, but rather, because appellant knowingly waived that right by his voluntary, intentional actions. Viewing the totality of the circumstances, the record amply supports the trial court's conclusion that appellant's development of conflicts with each and every counsel it had appointed constituted an abuse of the system and was part of an intentional strategy of delay employed by appellant. See id. (recognizing that the Sixth Amendment right to counsel is waived by conduct that is designed "to unreasonably and unjustifiably delay trial" and amounts to an "abuse" of the system).

Once again, although amply demonstrated by the sheer number of conflicts appellant developed with every one of the attorneys appointed, the specifics of appellant's conduct leave no doubt that the development of such conflicts was part of a dilatory strategy and represented an

abuse, not an assertion, of the Sixth Amendment guarantee. Particularly illuminating was appellant's performance at the March 16, 2016 hearing. Faced with the trial court's initial rejection of his request to replace yet another counsel, appellant went on a profane tirade against his then attorney in an attempt to force the trial court to grant his request. He punctuated it by inquiring of the trial court "Yeah, I know you don't like that, do you?[,]" which, in context, can only be viewed as an attempt by appellant to seize control of the proceedings and to provoke the trial court, not just to anger, but to capitulate to his demand for yet another new lawyer.

Moreover, appellant's behavior did not occur in a vacuum. He was well aware that his conduct could result in his loss of counsel, yet he continued to engage in the abusive, dilatory behavior anyway. In its June 11, 2014 order, the trial court found that appellant had waived the right to counsel; however, the trial court revisited that decision and appointed yet another counsel.

On April 1, 2016, at the first hearing after appellant's profane tirade, the trial court granted appellant's wish and removed Tichanski from the case, but also informed appellant that, by his conduct, he had waived his right to court-appointed counsel. Again, in an abundance of caution and providing far more protection for appellant's Sixth Amendment right than is constitutionally required, the trial court ultimately revisited that decision and appointed yet another attorney for appellant.

In doing so, the trial court warned appellant that any further issues imperiled his right to counsel. From the bench, the trial court told appellant that "it's real important that you cooperate with your counsel. [He] has been appointed to help you with this case. So you need to cooperate with him and *refusal to cooperate with your counsel can result in you waiving your right to court-appointed counsel*." (Emphasis added).

Despite the warning, appellant again "developed" a conflict with counsel. Having been warned repeatedly that such continued behavior would result in the loss of court-appointed counsel, appellant knew that he was forfeiting his Sixth Amendment right. Because the totality of the circumstances demonstrates that appellant, despite knowing the consequences, intentionally engaged in abusive behaviors for the purpose of delaying and disrupting the proceedings, the trial court reasonably concluded that appellant had knowingly and intelligently waived his right to counsel. Accordingly, the trial court did not commit reversible error.

### III. Appellant's mistaken reliance on McNair

Although acknowledging that a defendant can waive his right to counsel by conduct, appellant argues that his conduct did not constitute a waiver in this case. Specifically, he argues that our decision in McNair dictates that we reverse the trial court's judgment. We disagree.

In McNair, we reversed a trial court's finding that a defendant forfeited his right to counsel, concluding that the record was insufficient to support such a finding. 37 Va. App. at 699. We noted that "the trial court did not set forth the reasons for its determination that McNair waived his right to counsel[,]" id. at 697, and that the record did not include a "factual finding that the defendant's difficulty with his various attorneys amounted to a pattern of conduct calculated to prevent his trial from ever occurring," id. at 698. Although we expressly stated that "a failure to explicitly address the basis for its conclusion . . . would not *per se* constitute reversible error[,]" id. at 697, we noted "the better practice would be" for a trial court "to produce a record which reflects that (1) the defendant placed his counsel in a position that precluded effective representation and thereby constructively discharged his counsel or (2) through his obstructionist behavior, dilatory conduct, or bad faith, the defendant *de facto* waived counsel," id. at 697-98.

Here, the record suffers from no such deficiencies. The trial court's reasons for concluding that appellant had waived his right to counsel are apparent from the record. The trial

- 10 -

court found that appellant's repeated development of conflicts with counsel was part of a strategy of delay. The record leaves no doubt that, by his conduct, appellant "placed his counsel in a position that precluded effective representation," id. at 697, on multiple occasions with multiple lawyers. Similarly, the record clearly establishes that appellant also engaged in "obstructionist behavior, dilatory conduct, or bad faith" that constituted a "*de facto* waive[r of] counsel," id. at 698, and the trial court so found.

Furthermore, this record demonstrates that appellant *knew* his conduct jeopardized his right to continued counsel and engaged in that conduct anyway. On three occasions, the trial court found that appellant had waived his right to counsel. On two of those occasions, it relented and appointed new lawyers despite the previous findings of waiver. Between the second finding of waiver and the final finding of waiver, the trial court made certain that appellant was aware that further shenanigans could forfeit his right to counsel, yet appellant continued the same abusive pattern. Given the trial court's repeated admonitions and warnings, the trial court reasonably concluded that appellant, by his conduct, was knowingly waiving his right to counsel and the record more than amply supports that conclusion.

Ultimately, nothing we said in McNair and nothing we say today alters the relevant underlying standard applicable to waivers of counsel by conduct. The record in each such case must establish that, by his voluntary and intentional conduct, a defendant knowingly and intelligently waives his right to counsel. The record does so here because it amply demonstrates that appellant's conflicts with counsel were the result of voluntary and intentional conduct designed to delay and obstruct the proceedings and that appellant knew of the potential consequences of engaging in that conduct. Accordingly, the judgment of the trial court is affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>